# 22-757-cr

# 21-2563-cr

IN THE

## United States Court of Appeals

FOR THE SECOND CIRCUIT

———

UNITED STATES OF AMERICA,

*Appellee,*

vs.

NICHOLAS TURNQUIST,

*Defendant-Appellant.*

———

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

———

## JOINT APPENDIX

## VOLUME II of III (Pages A-279 to A-407)

———

U.S. ATTORNEY'S OFFICE – WESTERN
   DISTRICT OF NEW YORK
PAUL E. BONANNO, ESQ.
MONICA J. RICHARDS, ESQ.
*Attorneys for Plaintiff-Appellee*
138 Delaware Avenue
Buffalo, New York 14202
Telephone: (716) 843-5800
Email: paul.bonanno@usdoj.gov
     moica.richards@usdoj.gov

SINGER LEGAL PLLC
ROBERT C. SINGER, ESQ.
*Attorneys for Defendant-Appellant Nicholas
   Turnquist*
80 East Spring Street
Williamsville, New York 14221
Telephone: (716) 222-3288
Email: rob@singerlegalpllc.com

# TABLE OF CONTENTS

Page

## VOLUME I

Docket Sheet ................................................................................................ A-1

Criminal Complaint ..................................................................................... A-7

Order of Detention dated November 6, 2020 ............................................. A-18

Indictment dated February 3, 2021 ............................................................ A-20

Order of Detention dated February 25, 2021 ............................................. A-22

Defendant's Motion for Release from Custody dated August 21, 2021 ................ A-24
        Attorney Declaration................................................................ A-26
        Exhibit A ................................................................................. A-42
        Exhibit B ................................................................................. A-55
        Exhibit C ................................................................................. A-72
        Exhibit D ................................................................................. A-90
        Exhibit E ................................................................................. A-93
        Exhibit F ................................................................................. A-101

Government's Response in Opposition Defendant's Motion for
        Release from Custody, dated August 26, 2021 ........................... A-103
        Exhibit A ................................................................................. A-115
        Exhibit B ................................................................................. A-120
        Exhibit C ................................................................................. A-125
        Exhibit D ................................................................................. A-127
        Exhibit E ................................................................................. A-130

Defendants Amended Motion (adding Speedy Trial Exclusion), Motion
        for Extension of Time to File Reply to Government's Response in
        Opposition to Release, and Motion to Adjourn Detention Hearing,
        dated August 30, 2021 ........................................................... A-142

# TABLE OF CONTENTS (cont.)

Page

Defendant's Reply to Government's Opposition to Defendant's Motion
for Release from Custody, dated September 3, 2021 ................................... A-144
    Exhibit G ............................................................................ A-151
    Exhibit H ............................................................................ A-271
Defendant's Second Motion for Release from Custody, Motion to Seal
Document (Exhibit I to Declaration), and Motion to Expedite
Hearing on Motion dated August 13, 2021 .................................... A-272
    Attorney Declaration ........................................................... A-274

## VOLUME II

Government's Response in Opposition Defendant's Second Motion for
Release from Custody, dated September 16, 2021 ........................................ A-279

Defendant's Reply to Government's Opposition to Defendant's Second
Motion for Release from Custody, dated September 17, 2021 ................... A-286

Transcript of Proceedings (Bail Hearing) as to Defendant held
on September 9, 2021 before Magistrate Judge McCarthy ......................... A-289

Transcript of Proceedings (Bail Hearing) as to Defendant held
on September 17, 2021 before Magistrate Judge McCarthy ....................... A-309

Government's Appeal of Magistrate Judge McCarthy's Bail Decision
to District Judge Sinatra, dated September 22, 2021 ................................... A-334
    Memorandum in Support .................................................... A-336
    Exhibit A ............................................................................ A-289
    Exhibit B ............................................................................ A-309
    Exhibit C ................................................................... A-42, A-55
    Exhibit D ............................................................................ A-349
    Exhibit E ............................................................................ A-353

Defendant's Opposition to Government's Appeal of Magistrate Judge
McCarthy's Bail Decision, dated September 24, 2021 ................................. A-358
    Exhibit I ............................................................................. A-371
    Exhibit J ............................................................................. A-372

## TABLE OF CONTENTS (cont.)

Page

Government's Reply to Defendant's Opposition to Government's
    Appeal of Magistrate Judge McCarthy's Bail Decision, dated
    September 29, 2021 ........................................................................ A-373
        Exhibit A ................................................................................ A-378

Transcript of Proceedings (Bail Appeal) held on September 30, 2021,
        before District Judge Sinatra .............................................. A-381

Defendant's Notice of Appeal (Interlocutory), dated October 11, 2021 .............. A-407

# A-279

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

———————————————————————

UNITED STATES OF AMERICA,

               v.                             21-CR-15-JLS-JJM

NICHOLAS TURNQUIST,

                     Defendant.

———————————————————————

## GOVERNMENT'S RESPONSE IN OPPOSITION
## TO DEFENDANT'S SECOND MOTION FOR RELEASE

The United States of America, through its undersigned attorneys, submits this response in opposition to Defendant's Second Motion for Release from Custody (Dkt. 30) (the "Motion"). The defendant's Motion should be denied for the following reasons.

## I.     The Defendant Again Understates The Evidence Against Him.

In his Motion, the defendant again understates the powerful evidence against him. Specifically, the defendant insists that he did not admit during the controlled phone call that he engaged in sexual activity with Victim 1 when she was underage. In fact, in the relevant portion of the call – quoted at length below – Victim 1 confronts the defendant about having sex with her when she was a kid and he expresses remorse for it:

> VICTIM 1: Okay. Well, there -- I need to talk to you, like -- like, Justin's [Victim 1's husband] starting to ask questions, like. He's -- how am I supposed to tell him that --
>
> NICHOLAS TURNQUIST: I don't know what you want me to tell you. If you want to talk, then come over, talk. If you wanted Riley to see Lyla, you can take her anytime you want.
>
> VICTIM 1: I just need to know your input here. Like, he want -- like, he wants to know if -- he knows that I did things with you, okay. Like --
>
> NICHOLAS TURNQUIST: Right.

# A-280

VICTIM 1: He wants to know if I -- how old I was, and if I was a virgin, and all this other shit. Like, how am I supposed to explain this to him? Like, help me.

NICHOLAS TURNQUIST: I don't know how you're supposed to explain anything. I -- I don't. I -- I'm -- I feel -- this is what I'm telling you. I still don't know how to explain shit that I've seen. I still beat myself up over decisions that I've made as, far as shit when I was 13 and 14-years-old that fucking caused me ever to be able to be a cop. That I sit there, and I can't get over because I -- I beat myself up going, if I had just did that differently.

VICTIM 1: That's when you started doing stuff with me, though.

NICHOLAS TURNQUIST: When I was 13 or 14, I didn't even know you.

VICTIM 1: No. You're --

NICHOLAS TURNQUIST: I don't know what you're talking about.

VICTIM 1: Like, you're saying you've had stuff going on since 13 and 14, so have I.

NICHOLAS TURNQUIST: That's crap. Like, I -- I -- I don't know what you want me to tell you here. Like if --

VICTIM 1: Nick, I -- this is me and you, okay? I don't know if you're around Carley or what, but I just -- why can't you just talk to me one-on-one for five seconds?

NICHOLAS TURNQUIST: I am talking to you.

VICTIM 1: I need your help, Nick.

NICHOLAS TURNQUIST: I'm – [Victim 1], I am talking to you. I don't know what you want me to say to you.

VICTIM 1: Like, it's not like I can go to a counsellor and be, like, oh, I had sex with my stepdad from, fucking, when I was a little kid to fucking –

NICHOLAS TURNQUIST: Oh my God. Okay.

VICTIM 1: -- until I was 18.

NICHOLAS TURNQUIST: And then -- and then if that's what you feel you need to do, then go ahead, because that's crap, but.

VICTIM 1: No, it's not what I need to do. Nick, could you shut the fuck up here? Like, let's be serious. I don't know what the fuck you think is going on here, but you're not bullshitting me right now. Okay. I'm trying to have a conversation with you one-on-one. I don't know if it's because I'm on speaker and you're with Carley or you're next to her or what.

NICHOLAS TURNQUIST: No, I'm in the fucking bedroom by my damn self. I don't need this (inaudible)

VICTIM 1: Well, what the fuck, Nick, okay? I don't need this shit right now.

NICHOLAS TURNQUIST: I don't either. Like I don't know what the hell you want me to tell you.

VICTIM 1: I want you to one-on-one --

2

# A-281

NICHOLAS TURNQUIST: (Inaudible) Justin come over and I'll talk to him, too. You want to meet somewhere, I'll meet somewhere. If you want to hang out with Riley and Lyla, then you (inaudible) discuss that with her. I -- I -- I'm giving you options here.

VICTIM 1: Can you at least just tell me why?

NICHOLAS TURNQUIST: Why --

VICTIM 1: What made you want to do something with me?

NICHOLAS TURNQUIST: Why what?

VICTIM 1: What made you want to do things with me? Like, I wasn't pretty.

NICHOLAS TURNQUIST: Because you wanted to. Like, what -- I'm not going to sit here and keep having the discussion because I don't like the fact of any of it either, so. It is not something that I'm exactly fucking comfortable with. Do you think, like, what I -- I sit there and love that, or -- or -- fucking what? No.

VICTIM 1: I'm not saying you did, I just want some input here on how I'm supposed to get through it.

NICHOLAS TURNQUIST: Well, because it was a fucking consensual thing, and it fucking happened, and unfortunately, it can't be taken back.

VICTIM 1: Yes.

NICHOLAS TURNQUIST: So.

VICTIM 1: But yeah, it was --

NICHOLAS TURNQUIST: You think that I fucking sit there and don't fucking regret very second of it? Well, sure, but what the fuck. I -- nothing I do or say can get rid of that. Nothing I say or do --

VICTIM 1: Okay. But realizing now when I'm older, how was it consensual at the ages that I was?

NICHOLAS TURNQUIST: Seriously?

VICTIM 1: Yeah. It could have been where it was whatever, but I didn't know any better.

NICHOLAS TURNQUIST: Okay.

**VICTIM 1: I was a kid. Like, do you -- is that what you regret, or do you regret, like, the whole thing? Do you regret the young part, do you regret the old part, do you regret the whole thing? Like, all you keep saying is, oh, I regret it.**

**NICHOLAS TURNQUIST: Yeah.**

**VICTIM 1: Okay. So what do you regret?**

**NICHOLAS TURNQUIST: That it happened.**

VICTIM 1: Wow. Okay. All right.

NICHOLAS TURNQUIST: I mean, what was the point of this phone call, just to ask me that?

3

# A-282

VICTIM 1:  No.  The point was for you to help me here.  But if you regretted the whole thing, then why didn't it stop?

NICHOLAS TURNQUIST:  First of all, it did. So I don't know where you're coming from.

VICTIM 1:  Yeah, when I moved.  [Victim 1 moved out when she was 18.]

NICHOLAS TURNQUIST:  I don't know half of where the hell you're coming from right now so. (Inaudible)

VICTIM 1:  When I moved is when it  stopped.  The question -- whole point of this phone call wasn't for me to find out that you regretted it.  The whole point of this phone call was for you to help me figure out how I'm supposed to fucking tell my husband all of this.

NICHOLAS TURNQUIST:  And -- and that -- that was me telling you that -- if the times that it happened, it -- I -- I regret doing it, and I have trouble myself understanding it.  How am I supposed to help you if I can't even help myself?

VICTIM 1:  I don't know, I guess.  I was hoping that I had something calling  you.

NICHOLAS TURNQUIST:  Well, and I'm trying to, but you don't think that I sit there and fucking want to smash my head against the wall?  Knowing that I -- I raised you, and I -- I let things happen? Like, no.  I feel like a fucking piece of crap, but nothing I can think of and nothing that I can do is  going to change that that happened.


During the above conversation, Victim 1 becomes very emotional and is crying at several points, reflecting the trauma she suffered at the hands of the defendant.[1]


In addition to the controlled phone call, the defendant made a jail call after his arrest in which he told his wife to look up the age of consent in Pennsylvania, Ohio, Maryland, South Carolina, Florida, and Canada, *i.e.*, the places that he traveled to with Victim 1. Defendant says to his wife at one point, "let's say Pennsylvania is 15," then, according to the defendant, law enforcement cannot charge him with a crime.  This jail call corroborates the charge here, which is that the defendant took Victim 1 to Splash Lagoon in Pennsylvania and had sex with her there when she was only 16 years old.

---

[1] The government can provide a copy of the video recording of the controlled call to the Court if the Court wishes to watch it directly.

# A-283

The charge in this case is further corroborated by the defendant's biological daughter identified as Minor 2. Minor 2 told the interviewers from the Child Advocacy Center that she witnessed defendant have sexual intercourse with Victim 1. She specifically recalled a trip to Pennsylvania that took place when she was five years old and in the middle of kindergarten. She recounted the defendant and Victim 1 having some clothing on but Victim 1 being on top of defendant, facing him, her legs spread over defendant, and that the two were under a blanket. Minor 2 heard Victim 1 tell defendant to stop but he told her that he was the adult and would do what he wanted.

## II.    Defendant Has Not Overcome The Presumption Set Forth In Section 3142(e)(3).

Because the defendant is charged with an offense involving a minor victim in violation of 18 U.S.C. § 2423, there is a presumption that no condition or combination of conditions will reasonably assure the defendant's future appearance in Court and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(E). The defendant bears the burden of producing evidence to rebut that presumption. *See United States v. Thompson*, 436 F. Supp.3d 631, 635 (W.D.N.Y. 2020) ("The presumption shifts to a defendant 'a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight.'" (*citing United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)).

### A.    Safety of the Community

The presumption that the defendant poses a danger to the community is well justified here. There is compelling evidence that the defendant sexually abused his stepdaughter when she was a child and *while she was in his care*. This speaks to the defendant's disregard for the

5

# A-284

safety of others and his willingness to hurt the most vulnerable members of the community for his own gratification. Furthermore, as Victim 1 testified at trial in Wyoming County, the defendant threatened Victim 1 and her mother, grandmother, and sisters with violence if Victim 1 told on him. The defendant also repeatedly committed acts of physical violence against Victim 1 and her mom. *See* Dkt. 19, Exhibit A, trial transcript pages 38-39, 40, 43. Moreover, there has been an instance of witness intimidation already in this case, as the day that Victim 1 testified at trial in Wyoming County Court, the defendant's wife tried to run Victim 1 off the road. The defendant has not offered any new facts or evidence in his Motion to rebut the presumption that he presents a danger to the community.

### B.     Risk of Flight

The defendant faces a mandatory minimum sentence of 10 years in prison if convicted and the possibility of a life sentence. He additionally faces significant state prison time in Genesee County and Erie County. He has an enormous incentive to flee. Consequently, the bond that the defendant proposes is wholly insufficient. Defendant does not offer to post any of his *own* money or property, but offers only the equity in another person's property. There is little reason to think that the defendant – who has demonstrated a willingness to put his own interests above those of a young family member in his care – will not again put himself first.

6

# A-285

## CONCLUSION

Defendant has failed to overcome the statutory presumption for detention. His Motion should be denied.

DATED: Buffalo, New York, September 16, 2021.

JAMES P. KENNEDY, JR.
United States Attorney

BY: s/ PAUL E. BONANNO
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5873
Paul.Bonanno@usdoj.gov

7

# A-286

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                Plaintiff,

v.                                          Case No. 21-CR-15-JLS-JJM

NICHOLAS TURNQUIST,

                Defendant.

---

## ATTORNEY REPLY DECLARATION

I, ROBERT C. SINGER, ESQ., make this Declaration under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.      I am an attorney at law duly licensed to practice in the State of New York and this Court and I am Owner of Singer Legal PLLC, attorneys for defendant Nicholas Turnquist.

2.      I submit this declaration in reply to the government's opposition and in further support of the defendants' Second Motion for Release from Custody.

### Mr. Turnquist is able to post $5,000.00 of his own money, *if* necessary

3.      In opposition, the government argues that the Court should not release Mr. Turnquist because he did "not offer to post any of his *own* money or property, but offers only the equity in another person's property" and, as a result, "[t]here is little reason to think that the defendant . . . will not again put himself first" over family and abscond.  *See* Dkt. 34 at 6 (emphasis in original).  The defense does not agree with the premise of this argument for the reasons stated in its motion.  Beyond that, Mr. Turnquist offers three points in reply.

# A-287

4.      First, unlike state courts, federal courts rarely require defendants to "post" their *own* money to obtain pretrial release.  The Bail Reform Act was enacted to prevent this practice and to differentiate the system of pretrial release in the federal courts from the manner in which bail is imposed in state court systems.

5.      Second, Mr. Turnquist informed me yesterday that *if* the Court requires him to have "skin in the game," then he and his wife believe they are able to post $5,000.00 cash bail with the Clerk's Office using equity and operating funds in their business as well as an expected payment of state and federal benefits.

6.      Third, it is important to note that pretrial release under the Bail Reform Act does not require conditions, financial or otherwise, that *guarantee* appearance or *remove all risk*.  As Magistrate Judge Scott aptly put:

> Despite its willingness to allow defendant a chance at release, the Court acknowledges that "the enforcement of all constitutional restraints upon government in its efforts to administer the criminal law entails risks." *United States v. Gonzales Claudio*, 806 F.2d 334, 343 (2d Cir. 1986), *superseded in part on other grounds by* Fed. R. Crim P. 5(c). **"That, of course, is true of every defendant released on conditions; it is also not the standard authorized by law for determining whether pretrial detention is appropriate.  Section 3142 speaks of conditions that will 'reasonably' assure appearance, not guarantee it."** *United States v. Xulam*, 84 F.3d 441, 444, 318 U.S. App. D.C. 1 (D.C. Cir. 1996) (citation omitted).

*United States v. Albannaa*, No. 12-CR-174S, 2013 U.S. Dist. LEXIS 135618, at *9 (W.D.N.Y. Sep. 23, 2013) (Scott, J.) (emphasis added).  Furthermore, under the Bail Reform Act, a judicial officer is *not permitted* to impose any financial conditions of release which result in the pretrial detention of a defendant.  *See* 18 U.S.C. § 3142(c)(2).  Instead, a Court is required to impose *the least restrictive conditions* possible that will reasonably assure the defendant's appearance and the safety of the public.

# A-288

*See* 18 U.S.C. § 3142(c)(1)(B). To the extent the government advocates for more than that, its argument should be rejected.

## Conclusion

7.     For the reasons set forth above and in previous filings, the Court should adopt the recommendation of the Probation Office and release Mr. Turnquist from custody forthwith.

Dated: September 17, 2021
        Williamsville, New York

**SINGER LEGAL PLLC**
*Attorneys for Defendant Nicholas Turnquist*

By:     s/ Robert C. Singer, Esq.
        Robert C. Singer, Esq.
80 East Spring Street
Williamsville, New York  14221
(716) 222-3288
rob@singerlegalpllc.com

# A-289

09:20:28

 1                UNITED STATES DISTRICT COURT

 2               WESTERN DISTRICT OF NEW YORK

 3

 4

 5    - - - - - - - - - - - - - X

      UNITED STATES OF AMERICA    )     21CR15
 6                                )
      vs.
 7                                     Buffalo, New York
      NICHOLAS TURNQUIST,              September 9, 2019
 8              Defendant.             3:30 p.m.
      - - - - - - - - - - - - - X
 9    **BAIL HEARING**
      **Transcribed from an audio recording**
10    **All parties appeared via Zoom for Government platform**

11                  TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE JEREMIAH J. MCCARTHY
12               UNITED STATES MAGISTRATE JUDGE

13

14              JAMES P. KENNEDY, JR., ESQ.
                United States Attorney
15              BY: PAUL BONNANO, ESQ.
                Assistant United States Attorney
16              139 Delaware Avenue
                Buffalo, New York 14202
17

18              ROBERT CHARLES SINGER, ESQ.
                Singer Legal, PLLC
19              80 East Spring Street
                Williamsville, New York 14221

20

21

22

23

24    **COURT REPORTER: Karen J. Clark, Official Court Reporter**
                       **Karenclark1013@AOL.com**
25                     **100 State Street**
                       **Rochester, New York 14614**

```
 1              USA VS. N. TURNQUIST

 2              P R O C E E D I N G

 3              *         *         *

 4

 5

 6

 7              MAGISTRATE JUDGE MCCARTHY:  You want to

 8    call the matter, Eric.

 9              THE CLERK:  We're on the record in 21CR15,

10    United States versus Nicholas Turnquist for a bail

11    hearing.  Present by video is AUSA Paul Bonnano

12    defendant with attorney Robert Singer appearing by

13    telephone.  Honorable Jeremiah J. McCarthy presiding.

14              MAGISTRATE JUDGE MCCARTHY:  Mr. Turnquist,

15    can you see and hear me?

16              THE DEFENDANT:  Yes, I can, your Honor.

17              MAGISTRATE JUDGE MCCARTHY:  We have the

18    defense motion for release which the government opposes.

19    Counsel, have you both received Mr. McCray's Pretrial

20    Services Report dated September 2nd.

21              MR. BONNANO:  Yes, your Honor.

22              MR. SINGER:  Yes, for the defense.

23              MAGISTRATE JUDGE MCCARTHY:  Okay.  I

24    reviewed the papers and I'll hear from counsel.

25              MR. BONNANO:  Your Honor, would you LIKE me
```

Timestamps (left margin):
12:43:15 (5)
12:43:18 (6)
09:21:10 (7)
09:21:10 (8)
09:21:12 (9)
09:21:17 (10)
09:21:21 (11)
09:21:27 (12)
09:21:33 (13)
09:21:42 (14)
09:21:44 (15)
09:21:46 (16)
09:21:47 (17)
09:21:48 (18)
09:21:52 (19)
09:21:58 (20)
09:22:03 (21)
09:22:04 (22)
09:22:05 (23)
09:22:06 (24)
09:22:10 (25)

1                    USA VS. N. TURNQUIST

09:22:12  2    to address the Court FIRST or because it is the

09:22:15  3    Defendant's motion, I don't know.

09:22:16  4                    MAGISTRATE JUDGE MCCARTHY:  Yes.  It's the

09:22:17  5    Defendant's motion, so I'll hear from Rob first.

09:22:21  6                    MR. SINGER:  Thank you, your Honor.  And I

09:22:23  7    appreciate the last minute fixes to make this happen

09:22:27  8    today as well as Mr. Turnquist, so I appreciate the

09:22:30  9    Court's flexibility.  Your Honor, I know that my papers

09:22:33  10   are somewhat lengthy as far as the exhibits are

09:22:36  11   concerned, so I'm not going to go into everything today.

09:22:39  12   I know that you reviewed them.  This situation is what I

09:22:46  13   believe merits release, I think that is why the

09:22:48  14   probation office endorsed that option today.  Given the

09:22:51  15   nature and circumstances of the offense and the

09:23:13  16   allegations in this case are serious, but, at this time,

09:23:16  17   they are nothing more than what you said at arraignment

09:23:19  18   - allegations.  And when you take a look and boil down

09:23:22  19   the evidence in the case, I think I have, to some

09:23:25  20   degree, a lot more expansively in most cases, since I

09:23:31  21   had a preview of most of the evidence that possibly

09:23:36  22   would be turned over as well as presented against my

09:23:39  23   client.  There are a lot of concerns raised, the most

09:23:42  24   importantly is the credibility of Miranda Krantz, the

09:23:47  25   alleged victim in this case.  Prior to moving back to

|   |   |
|---|---|
| | 1 |
| 09:23:55 | 2 |
| 09:24:30 | 3 |
| 09:24:34 | 4 |
| 09:24:37 | 5 |
| 09:24:40 | 6 |
| 09:24:44 | 7 |
| 09:24:47 | 8 |
| 09:24:49 | 9 |
| 09:24:53 | 10 |
| 09:24:56 | 11 |
| 09:24:59 | 12 |
| 09:25:04 | 13 |
| 09:25:09 | 14 |
| 09:25:41 | 15 |
| 09:25:45 | 16 |
| 09:25:49 | 17 |
| 09:25:52 | 18 |
| 09:25:57 | 19 |
| 09:26:17 | 20 |
| 09:26:20 | 21 |
| 09:26:22 | 22 |
| 09:26:24 | 23 |
| 09:26:25 | 24 |
| 09:26:27 | 25 |

USA VS. N. TURNQUIST

Buffalo, for eight years I served as a special victims and prosecuted hundreds of sexual assault cases and investigated hundreds of them, whether they involved adults or children. The one thing that is consistent in every one of the cases and is different than the cases we see in Federal Court is the credibility of the victim in the case is essential. And when his or her believability becomes suspect, the weight of the evidence against the accused and the likelihood of conviction falls by the way side. And I've been on the receiving order of many acquittals as a prosecutor when the alleged victim did not testify credibly and did not have a track record of testifying consistently and credibly. And that is the situation that we face here. You know, like I said in our motion, this goes beyond just a faulty memory of a child, which I've dealt with before, or the ineptitudes of the prosecution team, which, thankfully, I didn't say it before, but was on display in one of the counts here. It comes down to the heart of the evidence in this case. And we don't believe the weight of the evidence in this case is strong as a result of that.

When you turn to the history and characteristics of Mr. Turnquist, he is an individual,

# A-293

1               USA VS. N. TURNQUIST

09:26:30   2   he has been a member of the community for many years.

09:26:33   3   He is an individual that has maintained employment, has

09:26:37   4   family ties, has a background of engaging in work which

09:26:41   5   required background investigations, which he passed, and

09:26:43   6   during all of the time, and regarding the danger that he

09:26:49   7   potentially poses the community, I guess if you believe

09:26:52   8   the allegations, this is a potential danger to Ms.

09:26:56   9   Krantz or perhaps other family members, but consistently

09:27:01   10  throughout this case, Mr. Turnquist has never violated

09:27:04   11  an Order of Protection that was put in place since the

09:27:06   12  inception of these charges.  And, you know, I think that

09:27:10   13  is a testament to who he is and where his head is.  I

09:27:15   14  know the government has brought up the fact that Carrie

09:27:18   15  Turnquist, my client's wife, is currently under charges

09:27:22   16  for witness tampering.  I've had an opportunity to

09:27:28   17  investigate that case, and I think the most important

09:27:30   18  thing that, like I put in in my motion, is Mr. Turnquist

09:27:35   19  was not involved in that.  That case is specific to

09:27:38   20  Carrie Turnquist, and it should have no bearing on what

09:27:41   21  he will do if released.  The other part is when I

09:27:46   22  started to investigate the case a little more, I came to

09:27:48   23  realize the charges sound a lot worse than what actually

09:27:52   24  happened and what transpired.  I have a video of the

09:27:56   25  responding officer that I received from Ms. Turnquist's

# A-294

USA VS. N. TURNQUIST

1

09:28:00  2  counsel today.  And I disclosed that to the government

09:28:04  3  prior to the hearing.  I don't know if Mr. Bonnano had

09:28:08  4  an opportunity to review it.  I think it put in context

09:28:11  5  what happened, which is two cars were on the road.  Ms.

09:28:14  6  Turnquist overtook Ms. Krantz's vehicle.  Ms. Krantz was

09:28:19  7  never driven off the road like she alleged inside the

09:28:23  8  complaints in this case because that is not what she

09:28:25  9  reported to the responding officer.  And, most

09:28:27  10  importantly, when the responding officer came and

09:28:30  11  engaged in six minutes of conversation was caught on

09:28:36  12  body cam, she was not overly concerned, she was not out

09:28:40  13  of sorts.  Her behavior was nothing to suggest she was

09:28:45  14  scared and feared with her life.  She was relatively

09:28:48  15  calm and joked with the officer.  And when given the

09:28:51  16  opportunity, she took most of the time to bash Mr.

09:28:54  17  Turnquist as opposed to report what happened with regard

09:28:57  18  to Carrie Turnquist, and this allegation of tampering

09:29:00  19  with her.  So, you know, I don't believe there is a

09:29:03  20  danger to the community based on that event alone.

09:29:07  21  Finally, I think, as I've highlighted to you, Judge,

09:29:11  22  there are a number of motives to fabricate in this case,

09:29:15  23  which should cause the Court to view with some suspicion

09:29:19  24  some of the allegations raised by the complainants in

09:29:22  25  this situation.  And on top of that, a lot of the

## A-295

```
            1              USA VS. N. TURNQUIST

09:29:25    2   witnesses have inconsistent statements throughout.  I

09:29:29    3   just gave you, as I said in my motion, the tip of the

09:29:32    4   iceberg when it comes to some of the inconsistencies

09:29:36    5   that I spotted, and this is just on my initial review of

09:29:39    6   the evidence.  So, at the end of the day, I think there

09:29:42    7   are conditions the Court can impose to allow Mr.

09:29:44    8   Turnquist to be removed from institutional confinement

09:29:49    9   pretrial.  I know that the condition, one of the

09:29:52   10   conditions that the probation office proposed was home

09:29:55   11   detention.  We ask that you not pose that, Judge, and

09:29:58   12   it's based on the fact that Mr. Turnquist needs to work.

09:30:02   13   He needs to work because this allegation and these cases

09:30:07   14   that have been stacked on top of each other have caused

09:30:10   15   great financial hardship with him, one of the reasons

09:30:13   16   I'm appointed in this case.  He has been unable to

09:30:16   17   support his wife, unable to support his children, unable

09:30:18   18   to support himself, and the financial stress will

09:30:22   19   continue if he is unable to work outside of the home.  I

09:30:25   20   think there are conditions that you can put in place

09:30:27   21   that involve electronic monitoring or Order of

09:30:30   22   Protection or other things to ensure safety of the

09:30:33   23   community and safety of Ms. Krantz.  I think also,

09:30:36   24   Judge, what I ask you to consider, since there are two

09:30:39   25   corresponding state cases, one of which has imposed bail
```

|     |                                                                      |
|-----|----------------------------------------------------------------------|
| 1   | USA VS. N. TURNQUIST                                                  |
| 2   | in the form of cash bond or property and one of which, I             |
| 3   | expect, potentially, as early as next week to do the                 |
| 4   | same, that you consider not imposing any type of                     |
| 5   | financial surety condition as part of bail in this case.             |
| 6   | Mr. Turnquist, as well as his family, are probably in a              |
| 7   | position to afford two state cases, but they are not                 |
| 8   | able to afford a third case if cash is imposed in this               |
| 9   | case, so we ask that you don't impose that.  But if you              |
| 10  | do consider that as a condition, impose a signature bond             |
| 11  | alone without any type of initial surety backing part.               |
| 12  | For all of those reasons, we believe that Mr. Turnquist              |
| 13  | should be released forthwith.  I'm prepared to move                  |
| 14  | forward and prepared to prepare for his defense in this              |
| 15  | case.  And he can do that better outside of a jail cell,             |
| 16  | particularly under the circumstances of the situation.               |
| 17  | MAGISTRATE JUDGE MCCARTHY:  Thank you, Mr.                            |
| 18  | Singer.                                                               |
| 19  | Mr. Bonnano?                                                          |
| 20  | MR. BONNANO:  Thank you, Judge.  I'll just                           |
| 21  | make a few points in response to that, Judge.  As my                 |
| 22  | papers, I think, laid out my argument as well.  The                  |
| 23  | first point that I want to highlight, though, is there               |
| 24  | is a presumption for detention in this case.  The                    |
| 25  | defendant is indicted on a charge Title 18 U.S.C.                    |

09:30:42, 09:30:48, 09:30:51, 09:30:55, 09:30:59, 09:31:02, 09:31:07, 09:31:11, 09:31:15, 09:31:19, 09:31:55, 09:31:57, 09:32:01, 09:32:04, 09:32:09, 09:32:12, 09:32:13, 09:32:14, 09:32:15, 09:32:20, 09:32:23, 09:32:26, 09:32:29, 09:32:33

# A-297

USA VS. N. TURNQUIST

Section 2423(a), transportation of a minor for purposes of illegal sexual activity. Given that charge, section 3142(e)(3)(E) capital (E) does provide for presumption of detention here based on the nature of the charge and the fact that it involves a minor victim. I'd also point out that it carries with it a mandatory minimum sentence of 10 years up to a maximum of life. I believe the Guideline range is about 121 to 151 months, so the defendant is facing a very significant sentence, a minimum of 10 years. So he does have incentive certainly to flee. He is also, as the Court is aware, now indicted in Genesee County on charges of rape and sexual abuse, he faces up to seven years in state prison on those charges if he is convicted. And he is indicted in Erie County on three separate counts of rape. On each of those, he faces up to four years in state prison. So he is facing a lot here.

Mr. Singer commented on the evidence. Judge, you know, I've been a prosecutor for a long time as well. I prosecuted lots of violent crime. I've been a prosecutor fifteen years. I don't know that counsel's opinions on the evidence and based on their prior experience are really that relevant, but, in my view, the evidence here is quite powerful, not only because of

USA VS. N. TURNQUIST

the testimony of victims or the victim here and other
witnesses, but because of the admissions of the
defendant.  And I highlighted those in my papers.
Shortly before the defendant was arrested, the victim
here, the minor victim, made a controlled phone call to
the defendant in which he made a number of admissions
effectively acknowledging consciousness of guilt.  He
says he regrets what happened.  The victim in the case
said in that controlled phone call, and I'll just read a
very short part of it, Judge, "How was it consensual at
the ages I was?  I was a kid.  Do you regret that?  Do
you regret the whole thing or the young part or the old
part?  Do you regret the whole thing?"  To which the
defendant said that he regretted that it happened.
That, again, reflects consciousness of guilt.  It was
also a recorded jail call that the defendant made to his
now wife in which he asked her to look up the age of
consent in a number of states that he traveled to with
the victim, including Pennsylvania, Ohio, Maryland,
South Carolina and Florida.  And he posed a
hypothetical, he said on the jail call, "Let's say the
age of consent in Pennsylvania is 15, how could I be
charged with anything there?"  That tends to corroborate
with what he is charged with here.  He is charged with

USA VS. N. TURNQUIST

2  taking the victim when she was 16 years old to

3  Pennsylvania for the purpose of eliciting sexual

4  activity.  He, also, when interviewed after or around

5  the time he was arrested by East Aurora police, he

6  acknowledged that he had sex with the victim, his

7  stepdaughter, when she was 18 or maybe 17.  So there are

8  a lot of statements that the defendant himself made that

9  corroborate what the victim has alleged here.  The

10  victim did testify at trial.  She was cross examined,

11  Judge.  She never wavered at all from the fact that this

12  defendant repeatedly raped her.  That was her testimony.

13  Starting when she was a child, when she was 12 or 13

14  years old and carrying on until she was 17 years old.

15  She never backed off that for a second.  The only reason

16  the Wyoming County indictment was dismissed was because

17  the way it was charged.  It was alleged that the conduct

18  occurred when she was under 13 and information presented

19  to Wyoming County Judge Molin seemed to indicate to him

20  that the conduct occurred when she was 13, so he

21  dismissed the indictment on that ground.  But, again,

22  the victim never wavered in her testimony.  There are

23  other witnesses as well, including her sister, minor

24  sister, and other family friends.  There are also

25  multiple prompt out cries that she made, for example, in

|  | 1 | USA VS. N. TURNQUIST |
| 09:42:27 | 2 | 2012. Now, Mr. Singer says, well, there are reasons to |
| 09:42:31 | 3 | fabricate here, including a custody battle, but there |
| 09:42:36 | 4 | was no custody battle back in 2012. So for all those |
| 09:42:43 | 5 | reasons, your Honor, I think there is very strong |
| 09:43:08 | 6 | evidence. I think there are very legitimate concerns |
| 09:43:11 | 7 | about safety of the community. The defendant's |
| 09:43:14 | 8 | daughters, the step sisters or half sisters of the |
| 09:43:19 | 9 | victim are 11 and 12 years old. There is a serious |
| 09:43:23 | 10 | concern about their safety if the defendant is released. |
| 09:43:26 | 11 | And for all of these reasons, the government strongly |
| 09:43:28 | 12 | opposes release your Honor. |
| 09:43:31 | 13 | MAGISTRATE JUDGE MCCARTHY: Thank you. Mr. |
| 09:43:32 | 14 | Singer, what about the jail calls? |
| 09:43:37 | 15 | MR. SINGER: Well, Judge, I think there are |
| 09:43:39 | 16 | two things that I could say in response to these |
| 09:43:42 | 17 | admissions that Mr. Bonnano raises. First with regards |
| 09:43:45 | 18 | to jail calls, I think you have to understand the |
| 09:43:49 | 19 | context in which the calls occurred. Earlier on in the |
| 09:43:52 | 20 | case, before I got involved in the case, to be perfectly |
| 09:43:55 | 21 | honest, Mr. Turnquist had doubts about his counsel, and |
| 09:43:58 | 22 | he, along with his wife, were strategizing ways in which |
| 09:44:03 | 23 | they could defend against the charges. And, you know |
| 09:44:05 | 24 | what, my client is not a lawyer. He is not someone -- |
| 09:44:08 | 25 | and I don't want to speak under him, but he is not |

USA VS. N. TURNQUIST

someone highly educated, and he is trying to come up
with ways, as a jailhouse lawyer, to try and defend
against these charges.  And one of the ways that people
defend against the charges is what is the age of
consent.  So I think what Mr. Bonnano is referring to
are unartful ways in which he is trying to determine
what is a defense I have in this case after he has
gotten crushed with allegations that put him behind bars
out of nowhere.  So I think that is the way I would
respond to that.

       With regard to the controlled call, Judge, I
mean, I don't think there is any hiding from the facts
that Mr. Turnquist engaging in relations with someone,
not his biological daughter, it's his stepdaughter, is
something that may not sit right with some people and
didn't sit right with him.  And as our papers made
clear, when the police confronted him about this, he
never hid from the fact that that happened and he
regretted it.  And when Miranda Krantz called him up
that day on this controlled call attempting to try and
get admissions out of him, what he regretted was the
fact that the two of them engaged in sexual intercourse
on a number of occasions when she was 17, when she was
18, when she was older than that, more likely than that,

# A-302

|   | USA VS. N. TURNQUIST |
|---|---|
| 09:46:14 | 2 | and he has never hid from that fact.  The only person |
| 09:46:17 | 3 | that hides from that fact, as we set forth in the |
| 09:46:21 | 4 | papers, is Miranda Krantz where she basically denies and |
| 09:46:26 | 5 | says this never happened, this never happened.  And if |
| 09:46:53 | 6 | you had an opportunity to review some of the text |
| 09:46:55 | 7 | messages, a smattering of them that we gave you, and |
| 09:46:58 | 8 | there are a lot more out there, I mean, number one, how |
| 09:47:02 | 9 | can she reasonably and credibly deny that is not her |
| 09:47:06 | 10 | sending those messages?  That is just impossible. |
| 09:47:10 | 11 | Number two, how can she deny that there wasn't a |
| 09:47:13 | 12 | consensual relationship between the two of them |
| 09:47:17 | 13 | happening at the time.  That is what she did at trial, |
| 09:47:21 | 14 | she denied it, never sent the messages, never did.  That |
| 09:47:27 | 15 | is falsehoods, direct falsehoods, Judge, and that is |
| 09:47:30 | 16 | what we're talking about as far as admissions in this |
| 09:47:33 | 17 | case.  I know this may not look right from a moral point |
| 09:47:37 | 18 | of view.  That is not for us to decide.  We're talking |
| 09:47:40 | 19 | about a criminal offense.  And I think that is something |
| 09:47:42 | 20 | that I think is important for the Court, with regard to |
| 09:47:45 | 21 | the admissions that the government seemed to harp on, |
| 09:47:49 | 22 | too, Judge.  They also respond to it, too, Judge, if I |
| 09:48:22 | 23 | may, that Ms. Krantz is always told, hey, look, Nick |
| 09:48:30 | 24 | Turnquist raped me.  That may be the case, but that was |
| 09:48:33 | 25 | not the case back in 2012 when investigators confronted |

# A-303

```
          1              USA VS. N. TURNQUIST
09:48:37  2     her.  It's not the case when her mother, who, by her own
09:48:41  3     words says, "I believe you.  Tell me what happened."
09:48:44  4     "No, mom, I'm lying."  That wasn't the case back then.
09:48:47  5     I mean, her mother, if she really believed her back
09:48:52  6     then, had the perfect opportunity back in 2012 to bring
09:48:55  7     the police in or bring the CAC in to have her
09:48:58  8     interviewed.  And what did she do?  She said everything
09:49:02  9     was fine down in Florida.  We had a great time.
09:49:30 10              Judge, you can't square that with the
09:49:32 11     evidence.  And then there are other denials that keep
09:49:39 12     happening from 2012, 2013, '14 and '15, there are all
09:49:44 13     these other opportunities that Ms. Krantz has to tell
09:49:49 14     guidance counselors, counselors, police officers, anyone
09:50:12 15     else about what has happened to her.  And she either
09:50:16 16     doesn't do it or when she is asked, she denies it.
09:50:20 17     Right?  So there is no consistency in her never
09:50:24 18     wavering.  The only time she ever wavered is during the
09:50:28 19     trial or in the grand jury.  But as we pointed out in
09:50:31 20     our motion, the problem there is there are multiple
09:50:34 21     inconsistencies of what she is saying.  Again, it's not
09:50:38 22     faulty memory of a child or bad lawyering by a
09:50:42 23     prosecutor.  We're not dealing with a child victim of
09:50:45 24     tender years, 6, 7, 8 years old where memory issues do
09:50:51 25     come into play or someone who is suffering from
```

# A-304

|  |  |
|---|---|
| | 1 |
| 09:50:57 | 2 |
| 09:51:12 | 3 |
| 09:51:15 | 4 |
| 09:51:18 | 5 |
| 09:51:21 | 6 |
| 09:51:24 | 7 |
| 09:51:46 | 8 |
| 09:52:05 | 9 |
| 09:52:07 | 10 |
| 09:52:11 | 11 |
| 09:52:14 | 12 |
| 09:52:16 | 13 |
| 09:52:19 | 14 |
| 09:52:23 | 15 |
| 09:52:43 | 16 |
| 09:52:45 | 17 |
| 09:52:47 | 18 |
| 09:52:49 | 19 |
| 09:52:50 | 20 |
| 09:52:50 | 21 |
| 09:52:51 | 22 |
| 09:52:58 | 23 |
| 09:53:05 | 24 |
| 09:53:08 | 25 |

USA VS. N. TURNQUIST

disassociated s amnesia, who is not remembering these
events because they are blocking them out.  We're
dealing with somebody who is much older as a victim,
alleged victim, and we're dealing with someone who
should have a better memory of this and someone, and,
more on top of that, who studied, by her own admission
on the stand, who studied a year to get all these things
that happened and get all these things straight, and she
still can't get it straight, Judge, she still can't.  I
don't think the evidence is strong in this case.  I
don't think the danger is strong in this case.  I
recognize that we have the rebuttable presumption in
this case, but I believe we overcome it.  And I believe
we overcome it a lot more than I do in a lot of other
cases.  And for all of those reasons, Mr. Turnquist
should be released.

      MR. BONNANO:  Your Honor, can I make one
comment in response?

      MAGISTRATE JUDGE MCCARTHY:  Yes.

      MR. BONNANO:  Judge, the indictment here
charges the defendants with transporting a minor under
the age of 18 for the purpose of illegal sexual
activity.  So under the age of 18.  So, 17 years old is
a minor for the purpose of this federal charge.  The

## A-305

                        USA VS. N. TURNQUIST

09:53:11  2   defendant admitted he may have had sex with her when she

09:53:14  3   was 17.  That's all, your Honor.

09:53:18  4                   MAGISTRATE JUDGE MCCARTHY:  All right.  Mr.

09:53:20  5   Singer, I agree with you that Ms. Krantz has some

09:53:25  6   serious credibility issues, however, I'm weighing

09:53:32  7   against that both the presumption and the fact that

09:53:36  8   there is this controlled call, March 17th, 2020, in

09:53:47  9   which Mr. Turnquist seems to admit that he had sex with

09:53:50  10  her when she was a kid.  I don't know exactly when it

09:53:54  11  was.

09:53:54  12                  THE DEFENDANT:  I did not.

09:53:56  13                  MAGISTRATE JUDGE MCCARTHY:  Exactly when it

09:53:56  14  was, I don't know whether the admission relates to the

09:54:01  15  transportation or not.

09:54:02  16                  THE DEFENDANT:  Your Honor, that never

09:54:05  17  happened.  If I can speak up for myself.

09:54:08  18                  MR. SINGER:  Nick, let me speak on your

09:54:10  19  behalf right now.  All right?

09:54:13  20                  MAGISTRATE JUDGE MCCARTHY:  In any event, I

09:54:15  21  don't know whether there will be a motion to suppress

09:54:17  22  that conversation or not, but I'm going on what's been

09:54:21  23  represented to me.  It seems that there is an admission.

09:54:26  24  Well, you've indicated that he admitted having sex with

09:54:30  25  her when she was 18 or maybe 17.  Whether that relates

```
            1              USA VS. N. TURNQUIST
09:54:33    2    to the transportation across state lines, I don't know
09:54:38    3    right now, but I think it's evidence that is very
09:54:42    4    troubling to me.  This is a presumption case.  I find at
09:54:48    5    this time you have not rebutted the presumption,
09:54:52    6    however, I'll leave the door open to a different bail
09:54:56    7    package that you might propose.  You've indicated that
09:54:58    8    the family is not able to put anything together.  I'm
09:55:02    9    sympathetic to that.  However, I'm not assured without
09:55:06   10    some type of concrete bail package that Mr. Turnquist
09:55:11   11    could be released without being either a risk of flight
09:55:16   12    or danger to the community.  He is facing some serious
09:55:19   13    time if he is convicted.  And so I'll leave the door
09:55:23   14    open to that, but, at this time, I'm denying your motion
09:55:27   15    without prejudice.  Thank you.
09:55:32   16              MR. BONNANO:  Thank you, Judge.
09:55:33   17              MR. SINGER:  Thank you, Judge.
09:55:41   18              Your Honor, can I get a breakout with Mr.
09:55:48   19    Turnquist possibly?
           20              (Whereupon, the Court concluded the
           21    proceedings.)
           22
           23
           24
           25
```

1

2

3                          *        *        *

4              CERTIFICATE OF REPORTER

5

6      I certify that the foregoing is a correct transcript

7  of the record to the best of my ability of proceedings

8  transcribed from the audio in the above-entitled matter.

9

10  S/ Karen J. Clark,  RPR

09:55:49  11  Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# A-308

1

18:36:26

```
 1                UNITED STATES DISTRICT COURT

 2                WESTERN DISTRICT OF NEW YORK

 3

 4

 5    - - - - - - - - - - - - - - X
      UNITED STATES OF AMERICA    )      21CR15
 6                                )
      vs.
 7                                        Buffalo, New York
      NICHOLAS TURNQUIST,                 September 17, 2019
 8                  Defendant.               11:00 a.m.
      - - - - - - - - - - - - - - X
 9    BAIL HEARING
      Transcribed from an audio recording
10    All parties appeared via AT&T telephone conference

11                TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE JEREMIAH J. MCCARTHY
12             UNITED STATES MAGISTRATE JUDGE

13

14             JAMES P. KENNEDY, JR., ESQ.
               United States Attorney
15             BY: PAUL BONNANO, ESQ.
               Assistant United States Attorney
16             139 Delaware Avenue
               Buffalo, New York 14202
17

18             ROBERT CHARLES SINGER, ESQ.
               Singer Legal, PLLC
19             80 East Spring Street
               Williamsville, New York 14221
20
               A. McCray, USPO
21

22

23

24    COURT REPORTER: Karen J. Clark, Official Court Reporter
                      Karenclark1013@AOL.com
25                    100 State Street
                      Rochester, New York 14614
```

# A-309

18:36:26

```
 1              UNITED STATES DISTRICT COURT

 2              WESTERN DISTRICT OF NEW YORK

 3

 4

 5    - - - - - - - - - - - - - - X
      UNITED STATES OF AMERICA    )      21CR15
 6                                )
      vs.
 7                                       Buffalo, New York
      NICHOLAS TURNQUIST,                September 17, 2019
 8              Defendant.               11:00 a.m.
      - - - - - - - - - - - - - - X
 9    BAIL HEARING
      Transcribed from an audio recording
10    All parties appeared via AT&T telephone conference

11              TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE JEREMIAH J. MCCARTHY
12              UNITED STATES MAGISTRATE JUDGE

13

14              JAMES P. KENNEDY, JR., ESQ.
                United States Attorney
15              BY: PAUL BONNANO, ESQ.
                Assistant United States Attorney
16              139 Delaware Avenue
                Buffalo, New York 14202
17

18              ROBERT CHARLES SINGER, ESQ.
                Singer Legal, PLLC
19              80 East Spring Street
                Williamsville, New York 14221
20
                A. McCray, USPO
21

22

23

24    COURT REPORTER: Karen J. Clark, Official Court Reporter
                      Karenclark1013@AOL.com
25                    100 State Street
                      Rochester, New York 14614
```

A-310

# EXHIBIT B

**A-311**

```
 1              USA VS. N. TURNQUIST

 2              P R O C E E D I N G

 3              *          *          *

 4

12:43:15   5

12:43:18   6

18:36:27   7          MAGISTRATE JUDGE MCCARTHY:  All right.

18:36:27   8   Could everyone on the line please identify themselves?

18:36:31   9          MR. BONNANO:  Good morning, your Honor.

18:36:32  10   Paul Bonnano from the U.S. Attorney's Office.

18:36:34  11          MAGISTRATE JUDGE MCCARTHY:  Okay.

18:36:35  12          MR. SINGER:  Good morning, Judge.  Robert

18:36:36  13   Singer on behalf of Mr. Turnquist.

18:36:39  14          THE DEFENDANT:  Morning.  This is Mr.

18:36:41  15   Turnquist.

18:36:42  16          MAGISTRATE JUDGE MCCARTHY:  Mr. Turnquist,

18:36:43  17   good morning.

18:36:44  18          THE DEFENDANT:  Good morning, your Honor.

18:36:47  19          MAGISTRATE JUDGE MCCARTHY:  And do we have

18:36:48  20   Mr. Turnquist's wife and mother on the line yet?

18:36:58  21   Anybody know?

18:36:58  22          DEFENDANT'S MOTHER:  Yes, we are both here.

18:37:05  23          MAGISTRATE JUDGE MCCARTHY:  Good morning.

18:37:05  24   You want to call the case, Eric?

18:37:08  25          THE CLERK:  We are on the record in criminal
```

# A-312

3

```
 1              USA VS. N. TURNQUIST

 2    proceeding 21CR15, United States versus Nicholas

 3    Turnquist for a bail hearing.  Present by AT&T telephone

 4    conference, AUSA Paul Bonanno; Defendant Turnquist with

 5    attorney Robert Singer; USPO Andre McCray.  The

 6    Honorable Jeremiah J. McCarthy presiding.

 7              MAGISTRATE JUDGE MCCARTHY:  Good morning,

 8    everyone, again.  And first my apologies to everyone.

 9    It's not the Eric's fault, but somehow we need to get to

10    the bottom of why I am unable to hear anybody.

11    Apparently you could hear me on the video hook up, but

12    that is a question for another day.

13              In any event, do we all agree to proceed by

14    telephone conference this morning?

15              MR. BONNANO:  Government agrees, your Honor.

16              MR. SINGER:  And Mr. Turnquist agrees.

17              MAGISTRATE JUDGE MCCARTHY:  Okay.  Thank

18    you.  I have reviewed Mr. Turnquist's second motion for

19    release from custody, which is docket number 30.  The

20    government has filed an opposition, which is docket No.

21    35, and Mr. Singer has filed a reply, which is docket

22    No. 36.  I have reviewed all of those documents.  I'll

23    hear from counsel with that in mind.

24              Mr. Singer, it's your motion, so I guess you

25    go first.
```

**A-313**

4

|   |   |
|---|---|
| | 1 |
| 18:38:39 | 2 |
| 18:38:40 | 3 |
| 18:38:44 | 4 |
| 18:38:47 | 5 |
| 18:38:50 | 6 |
| 18:38:53 | 7 |
| 18:38:56 | 8 |
| 18:38:59 | 9 |
| 18:39:03 | 10 |
| 18:39:06 | 11 |
| 18:39:09 | 12 |
| 18:39:12 | 13 |
| 18:39:15 | 14 |
| 18:39:18 | 15 |
| 18:39:23 | 16 |
| 18:39:28 | 17 |
| 18:39:33 | 18 |
| 18:39:37 | 19 |
| 18:39:39 | 20 |
| 18:39:42 | 21 |
| 18:39:46 | 22 |
| 18:39:50 | 23 |
| 18:39:53 | 24 |
| 18:39:57 | 25 |

USA VS. N. TURNQUIST

MR. SINGER:  Thank you, your Honor.  I know you've read all of the papers.  I'm not going to belabor the points in the papers, and I think, generally speaking, it's obvious that I am not going to be able to convince Mr. Bonnano at this stage that the evidence is not very strong in his case, and he is not going to, likewise, be able to convince me at this stage that the evidence is very strong or not as strong as I believe in my case.  But at the end of the day, that is something that will be resolved at trial before Judge Sinatra.  As you know, we're here today to discuss the bail situation and the weight of the evidence against the person is but one of several factors to consider regarding bail in this case.  We've gone through a lot of those factors. And what I gathered from the last bail hearing, which you denied my motion without prejudice and allowed me to represent a different bail package, is that financial considerations was something, perhaps, that was important to the Court.  And so since our hearing, as I put out in my papers, I had conversations with my client and his family about ways that potentially we could open up opportunities to help alleviate some of the concerns of the government or perhaps the Court regarding Mr. Turnquist and his risk of flight.  As I put out in my

|   |   |
|---|---|
| | 1 |
| 18:40:02 | 2 |
| 18:40:07 | 3 |
| 18:40:12 | 4 |
| 18:40:16 | 5 |
| 18:40:20 | 6 |
| 18:40:23 | 7 |
| 18:40:27 | 8 |
| 18:40:33 | 9 |
| 18:40:37 | 10 |
| 18:40:40 | 11 |
| 18:40:44 | 12 |
| 18:40:47 | 13 |
| 18:40:53 | 14 |
| 18:40:56 | 15 |
| 18:41:00 | 16 |
| 18:41:02 | 17 |
| 18:41:05 | 18 |
| 18:41:09 | 19 |
| 18:41:12 | 20 |
| 18:41:15 | 21 |
| 18:41:18 | 22 |
| 18:41:21 | 23 |
| 18:41:24 | 24 |
| 18:41:29 | 25 |

                    USA VS. N. TURNQUIST

papers, Mr. Turnquist doesn't come from any means, but, you know, his mother has graciously agreed to put up equity she has in her house to secure his release. She and I discussed, you know, what is available because, as you know, Genesee County has put in bail conditions regarding monetary amounts, and one of those conditions is $30,000 of an surety and she planned to put forward equity in her house to secure bond in Genesee County. There is also the outstanding Erie County matter. I was down in front of Judge Hennigens (phonetic) to brief her as to what the status of the federal case was. She ended up delaying her bail hearing on Wednesday for two reasons. One is Mr. Turnquist was not present and there was no way to join him electronically or virtually because New York State doesn't allow that, so she was uncomfortable proceeding without his presence as he has a right to be there. So she ordered his production, and that is going to occur next Wednesday at 2:30, but, you know, I also updated her regarding the status of this case as well. And I don't know what Erie County Court may or may not do regarding financial conditions, but, as you know, New York State bail is something that is required for release. It's a little different than Federal Court. But, I think the $50,000 surety interest

# A-315

1            USA VS. N. TURNQUIST

18:41:33  2   that Patty Turnquist put up in her house, I think, is

18:42:16  3   important and may allay the Court's concerns regarding

18:42:22  4   risk of flight that is raised by the government or

18:42:24  5   perhaps the Court has reservations about. I know that

18:42:27  6   the government responded that is not enough because Mr.

18:42:31  7   Turnquist could just turn on his mother and leave.

18:42:35  8   Respectfully, Judge, that is not the relationship that

18:42:37  9   they have. And, you know, it's not I think $50,000 an

18:42:43  10  insignificant amount. When you put it together, whether

18:42:48  11  he leaves and flees federal jurisdiction or leaves and

18:42:52  12  flees state jurisdiction or leaves and flees all three,

18:42:56  13  the result is the same in Ms. Turnquist is going to lose

18:42:59  14  the equity in her house. And that is not something,

18:43:03  15  based on the understanding that I have in my

18:43:06  16  investigation of this case, my client is willing to do

18:43:09  17  because he has a good positive relationship with his

18:43:12  18  mother. I think the other thing that I put forward in

18:43:14  19  some of my papers and in reply this morning I said is

18:43:18  20  there anything you can do, Mr. Turnquist, regarding your

18:43:21  21  own financial resources. And I recognize that you don't

18:43:24  22  have a home and I recognize that you have a lot of legal

18:43:26  23  bills to pay. And I recognize that you have a lot of

18:43:30  24  legal bills to pay in the future as well. He had some

18:43:33  25  hard conversations with his wife and they have some cash

# A-316

|  | 1 | USA VS. N. TURNQUIST |
|---|---|---|
| 18:43:39 | 2 | available.  Some of it is still incoming at this point, |
| 18:43:42 | 3 | but he said, you know, "If I need to put $5,000 cash up |
| 18:43:45 | 4 | to the clerk's office to help assure the Judge I'm going |
| 18:43:48 | 5 | to show up for trial, then I'll do that, even if it |
| 18:43:51 | 6 | takes away money from my family and my potential legal |
| 18:43:55 | 7 | defense.  But, you know, I want to show everyone that |
| 18:43:58 | 8 | I'm willing to go ahead and do that."  I think that is |
| 18:44:01 | 9 | an important step.  You know, there might be more that |
| 18:44:04 | 10 | could become available, but, I mean, at this point, what |
| 18:44:08 | 11 | I understand the couple is able to do.  So, Judge, you |
| 18:44:12 | 12 | know, when you take a look at this case again and you |
| 18:44:16 | 13 | focus on Mr. Turnquist's history and these conditions, |
| 18:44:20 | 14 | you know, again, this is an individual who does not have |
| 18:44:24 | 15 | a criminal record.  This is an individual who has served |
| 18:44:27 | 16 | the community in various ways.  This is an individual |
| 18:44:31 | 17 | who has been gainfully employed.  This is an individual |
| 18:44:34 | 18 | who has ties to the community through both marriage, |
| 18:44:38 | 19 | children, job, family and otherwise.  This is an |
| 18:44:43 | 20 | individual who does not have an alcohol or drug abuse |
| 18:44:47 | 21 | problem.  This is an individual who has not failed to |
| 18:44:51 | 22 | show up or cooperate with the police in this |
| 18:44:54 | 23 | investigation.  This is an individual who doesn't have a |
| 18:44:57 | 24 | track record of committing offenses while in custody. |
| 18:45:03 | 25 | And, you know, in every case that you see, when one of |

# A-317

8

|         |    | USA VS. N. TURNQUIST                                        |
|---------|----|------------------------------------------------------------|
| 18:45:06 | 2  | those things is absent, that is usually what the Court     |
| 18:45:10 | 3  | relies on as a reason to keep someone in custody.          |
| 18:45:15 | 4  | Because people with drug problems or alcohol problems      |
| 18:45:18 | 5  | are more prone to break their conditions of release.       |
| 18:45:21 | 6  | People who have history of criminal activity are prone     |
| 18:45:26 | 7  | to engage in that type of activity, again, even when on    |
| 18:45:30 | 8  | conditions of release.  People who don't, you know, play   |
| 18:45:33 | 9  | by the rules in jail or play by the rules of society are   |
| 18:45:37 | 10 | more apt to abscond and not play by the rules that you     |
| 18:45:41 | 11 | set as conditions.  And that is not present here.  And     |
| 18:45:44 | 12 | that is important for purposes of the Bail Reform Act      |
| 18:45:47 | 13 | because when those things are not present, the Bail        |
| 18:45:50 | 14 | Reform Act, as you know, indicates that you should look    |
| 18:45:54 | 15 | at the least restrictive conditions available to ensure,   |
| 18:45:57 | 16 | not just safety of the community, but Mr. Turnquist's      |
| 18:46:01 | 17 | appearance at trial.  And then if we put forward a         |
| 18:46:05 | 18 | different bail package here that helps allay some of       |
| 18:46:08 | 19 | those concerns.  I recognize that the government still     |
| 18:46:11 | 20 | has reservations about release because they believe Mr.    |
| 18:46:14 | 21 | Turnquist poses a danger to the community as well as the   |
| 18:46:17 | 22 | alleged victim in this case.  And, again, I go back to     |
| 18:46:20 | 23 | the fact that there is one alleged victim in this case,    |
| 18:46:23 | 24 | not multiple.  This is a family connection, not a          |
| 18:46:29 | 25 | stranger connection.  So even if you were to believe the   |

USA VS. N. TURNQUIST

18:46:32  2  validity of some of the allegations in the case, it

18:46:34  3  doesn't indicate that if you release Mr. Turnquist on

18:46:39  4  some conditions, he is either going to have access to

18:46:42  5  the alleged victim to do her harm or access to other

18:46:46  6  people to do them harm.  I realize one of the things we

18:46:51  7  argued for last time and we continue to do so today is

18:46:54  8  that Mr. Turnquist should have the opportunity to leave

18:46:57  9  his home to work because that is something that is

18:46:59  10  important to help support himself, his family and his

18:47:02  11  legal defense.  But I talked to Mr. Turnquist, but if

18:47:06  12  it's a choice between getting out of jail and staying in

18:47:09  13  jail is not having the ability to work because he is on

18:47:13  14  home detention or figuring out a different option to

18:47:17  15  work virtually because that is the only option

18:47:20  16  available, then he wants to be home.  He wants to be

18:47:22  17  home with his wife.  He wants to be home with his

18:47:25  18  family.  He wants to be home so he can prepare his

18:47:28  19  defense in this case.  And if he cannot work or have to

18:47:31  20  figure out another way to do work, that is something he

18:47:34  21  is willing to do.

18:47:36  22          So for all of the reasons I stated, I

18:47:38  23  believe the factors on balance weigh in favor of

18:47:41  24  release.  That is why the Probation Department came to

18:47:44  25  that conclusion.  That is why they recommended release

|   | | |
|---|---|---|
| | 1 | USA VS. N. TURNQUIST |
| 18:47:46 | 2 | in this case.  And that is why the Court should |
| 18:47:49 | 3 | recommend release in this case as well. |
| 18:47:52 | 4 | MAGISTRATE JUDGE MCCARTHY:  All right. |
| 18:47:52 | 5 | Thank you, Mr. Singer. |
| 18:47:54 | 6 | Mr. Bonanno? |
| 18:47:55 | 7 | MR. BONNANO:  Thank you, Judge.  Good |
| 18:47:56 | 8 | morning, again.  I think that what Mr. Singer's argument |
| 18:47:59 | 9 | does not really address, and this is the primary point |
| 18:48:04 | 10 | to my papers, Judge, there is a statutory presumption |
| 18:48:07 | 11 | here for detention.  There is a statutory presumption |
| 18:48:10 | 12 | here that the defendant does present a danger to the |
| 18:48:13 | 13 | community.  And that dangerousness is not allayed by any |
| 18:48:20 | 14 | bail application or bail package.  There is compelling |
| 18:48:27 | 15 | evidence, and I laid it out at length, Judge, in my |
| 18:48:29 | 16 | papers.  I know it's an over two-page excerpt from that |
| 18:48:34 | 17 | controlled call, but I think it's important for the |
| 18:48:38 | 18 | Court to read the whole controlled call transcript that |
| 18:48:43 | 19 | I put forth in the papers and it becomes quite clear |
| 18:48:46 | 20 | that this defendant, when confronted by the victim in |
| 18:48:49 | 21 | that controlled call, acknowledged and expressed remorse |
| 18:48:53 | 22 | for having sex with her, frankly, when she was a kid, |
| 18:48:57 | 23 | when she was young.  He is facing a mandatory minimum of |
| 18:49:02 | 24 | 10 years in prison if convicted, possibility of up to |
| 18:49:08 | 25 | life, he is facing state prison in Erie County and |

USA VS. N. TURNQUIST

| | | |
|---|---|---|
| 18:49:11 | 2 | Genesee County.  And, as I pointed out in my papers, the |
| 18:49:14 | 3 | victim was threatened by this defendant.  She testified |
| 18:49:20 | 4 | to that in Wyoming County, she was physically assaulted |
| 18:49:24 | 5 | by this defendant.  And, most importantly, she was |
| 18:49:26 | 6 | sexually abused by this defendant over a course of |
| 18:49:31 | 7 | years, so it wasn't a one-time incident, but over a |
| 18:49:35 | 8 | course of years while she was in his care as his |
| 18:49:38 | 9 | stepdaughter.  So the statutory presumption of |
| 18:49:42 | 10 | dangerousness that exists here is well founded and this |
| 18:49:45 | 11 | defendant presents a substantial danger to the community |
| 18:49:48 | 12 | that this bail application does not alleviate and it |
| 18:49:54 | 13 | does not overcome the presumption for detention. |
| 18:50:02 | 14 | MAGISTRATE JUDGE MCCARTHY:  All right. |
| 18:50:02 | 15 | Thank you.  Excuse me.  Mr. Singer, well, I address this |
| 18:50:10 | 16 | to both of you, you both, I take it, have received and |
| 18:50:13 | 17 | reviewed the Pretrial Services Report dated September |
| 18:50:17 | 18 | 2nd, correct? |
| 18:50:20 | 19 | MR. BONNANO:  Yes, Judge. |
| 18:50:20 | 20 | MR. SINGER:  Yes, your Honor. |
| 18:50:22 | 21 | MAGISTRATE JUDGE MCCARTHY:  All right.  Mr. |
| 18:50:23 | 22 | Singer, the page six of that report lists a series of |
| 18:50:28 | 23 | recommended conditions, including home detention.  Are |
| 18:50:32 | 24 | you in agreement with all of those conditions? |
| 18:50:36 | 25 | MR. SINGER:  Judge, as I expressed earlier, |

|  | 1 | USA VS. N. TURNQUIST |
|---|---|---|
| 18:50:39 | 2 | the only thing that we had asked and differed from the |
| 18:50:44 | 3 | Probation Department, we asked that the detention |
| 18:50:47 | 4 | condition be applied because he needs to work. But, as |
| 18:50:53 | 5 | we indicated this morning, if that condition is needed |
| 18:50:55 | 6 | to get his release, then we would adopt that condition. |
| 18:50:59 | 7 | MAGISTRATE JUDGE MCCARTHY: My understanding |
| 18:50:59 | 8 | is that home detention, and, Mr. McCray, you can correct |
| 18:51:07 | 9 | me if I'm wrong, is different than home incarceration. |
| 18:51:09 | 10 | Home incarceration would prohibit him from working, but |
| 18:51:12 | 11 | home detention would not. Is that correct, Mr. McCray? |
| 18:51:15 | 12 | PROBATION: That is correct, Judge. |
| 18:51:18 | 13 | MAGISTRATE JUDGE MCCARTHY: I would like to |
| 18:51:19 | 14 | speak, if I may, Mr. Singer, with his mother. |
| 18:51:25 | 15 | MR. SINGER: Yes, Judge. She is on and I |
| 18:51:27 | 16 | will allow her to unmute herself. |
| 18:51:31 | 17 | MRS. TURNQUIST: Hello, yes, your Honor. |
| 18:51:33 | 18 | MAGISTRATE JUDGE MCCARTHY: Good morning |
| 18:51:33 | 19 | ma'am. |
| 18:51:34 | 20 | MRS. TURNQUIST: Good morning. |
| 18:51:35 | 21 | MAGISTRATE JUDGE MCCARTHY: Would you state |
| 18:51:36 | 22 | your name, please? |
| 18:51:37 | 23 | MRS. TURNQUIST: Patricia A. Turnquist. |
| 18:51:43 | 24 | MAGISTRATE JUDGE MCCARTHY: Thank you. Now, |
| 18:51:44 | 25 | I believe that you're aware that your son's attorney -- |

|  | 1 | USA VS. N. TURNQUIST |
| 18:51:47 | 2 | you are the defendant's mother, correct? |
| 18:51:50 | 3 | MRS. TURNQUIST: I certainly am. |
| 18:51:53 | 4 | MAGISTRATE JUDGE MCCARTHY: And I believe |
| 18:51:54 | 5 | you're aware that your son's attorney has proposed as a |
| 18:51:58 | 6 | condition of his release that you post your home, the |
| 18:52:04 | 7 | equity in your home to the extent of $50,000. Is that |
| 18:52:08 | 8 | correct? |
| 18:52:09 | 9 | MRS. TURNQUIST: That's correct, sir. |
| 18:52:11 | 10 | MAGISTRATE JUDGE MCCARTHY: Are you willing |
| 18:52:12 | 11 | to do so, ma'am? |
| 18:52:14 | 12 | MRS. TURNQUIST: Yes, I certainly am. I |
| 18:52:17 | 13 | signed papers for that already. |
| 18:52:18 | 14 | MAGISTRATE JUDGE MCCARTHY: I want you to |
| 18:52:19 | 15 | understand that you do not have to do so. This is |
| 18:52:22 | 16 | entirely up to you, but it is a significant risk that |
| 18:52:27 | 17 | you would be undertaking because if your son violates |
| 18:52:30 | 18 | any of the conditions of his release, then not only |
| 18:52:34 | 19 | would his release be revoked, but you would stand to |
| 18:52:37 | 20 | lose your equity in your home up to $50,000, so that is |
| 18:52:41 | 21 | a significant risk. Do you understand that, ma'am? |
| 18:52:45 | 22 | MRS. TURNQUIST: I certainly do, sir. |
| 18:52:47 | 23 | MAGISTRATE JUDGE MCCARTHY: And |
| 18:52:48 | 24 | notwithstanding that, you are willing to do so. Is that |
| 18:52:51 | 25 | correct? |

**A-323**

14

```
  1              USA VS. N. TURNQUIST

  2         MRS. TURNQUIST:  That is correct.

  3         MAGISTRATE JUDGE MCCARTHY:  All right.

  4  Thank you.  Counsel, I did deny the previous request for

  5  bail.  I expressed some concerns about the evidence in

  6  this case.  I still have those concerns.  I recognize

  7  that there may be some credibility issues with respect

  8  to the victim, but there are also recorded conversations

  9  and I know the government is relying heavily on those.

 10  It's not up to me to make a determination of the

 11  defendant's guilt or innocence.  I find that under the

 12  circumstances, the posting of $50,000 secured by his

 13  mother's home would reasonably assure me that if

 14  released, he would not pose a risk of flight or danger

 15  to the community.  I think that is a significant bail

 16  package, which is different from the package that was

 17  proposed on the previous motion.  I appreciate the fact

 18  that Mr. Singer has also offered an additional $5,000 to

 19  be posted by the defendant and his wife.  However, under

 20  the Bail Reform Act, I'm going to impose the least

 21  restrictive set of conditions.  I find that the $50,000

 22  is adequate and that the additional $5,000 is not

 23  required.  In addition, obviously, he will have to

 24  satisfy the requirements of any other court for his

 25  release, any state court which imposes conditions.  He
```

Time stamps (left column):
18:52:51
18:52:54
18:52:54
18:53:02
18:53:06
18:53:10
18:53:16
18:53:24
18:53:27
18:53:31
18:53:35
18:53:44
18:53:47
18:53:51
18:53:55
18:53:59
18:54:04
18:54:10
18:54:15
18:54:20
18:54:27
18:54:33
18:54:38
18:54:43

**A-324**

```
           1                USA VS. N. TURNQUIST
18:54:47   2    will have to abide by all of the conditions set forth at
18:54:52   3    page six of the Pretrial Services Report.
18:54:56   4                Mr. Singer, do you wish me to review those
18:54:58   5    with him on the record?
18:55:01   6                MR. SINGER:  I think I can explain those to
18:55:02   7    him, Judge.  I know Mr. Turnquist has a copy of the bail
18:55:06   8    report, so unless you feel a need to place them on the
18:55:10   9    record.
18:55:10  10                MAGISTRATE JUDGE MCCARTHY:  Well, just so
18:55:11  11    that he and his mother both understand the conditions of
18:55:14  12    release, I think I'm going to summarize them again.
18:55:18  13                MR. SINGER:  Yes, your Honor.
18:55:18  14                MAGISTRATE JUDGE MCCARTHY:  And let me say,
18:55:20  15    also, that the release will not be effective until the
18:55:27  16    government is satisfied as to the sufficiency of equity
18:55:32  17    in his mother's home.  So you two can work out the
18:55:37  18    details of that.  The conditions of release in addition
18:55:42  19    to the posting of $50,000 security by his mother will be
18:55:47  20    that he report to pretrial services within 24 hours of
18:55:51  21    his release and as directed thereafter by the probation
18:55:54  22    office.  That he surrender any passport or passport card
18:55:58  23    to the Clerk of the Court.  And that he surrender any
18:56:02  24    other international travel documents to appropriate
18:56:05  25    authorities.  That he not obtain a new passport or other
```

# A-325

|  |  |  |
|---|---|---|
|  | 1 | USA VS. N. TURNQUIST |
| 18:56:09 | 2 | international travel documents.  That his travel will be |
| 18:56:13 | 3 | restricted to the Western District of New York unless |
| 18:56:15 | 4 | the Court grants permission to travel elsewhere.  That |
| 18:56:19 | 5 | he avoid all contact, directly or indirectly, with any |
| 18:56:23 | 6 | persons who are or may become a potential victim or |
| 18:56:27 | 7 | witness in this case.  That he possess no firearm or |
| 18:56:31 | 8 | destructive device.  That he abide by the conditions of |
| 18:56:36 | 9 | the electronic monitoring program to be monitored |
| 18:56:40 | 10 | electronically, that is, with home detention, which will |
| 18:56:44 | 11 | allow him to leave the home for purposes of meetings |
| 18:56:48 | 12 | with his attorney, medical treatment and/or work, but, |
| 18:56:51 | 13 | otherwise, he should be at the home and he'll contribute |
| 18:56:57 | 14 | to the monitoring program and as directed by pretrial |
| 18:57:00 | 15 | services.  That he refrain from obstructing or |
| 18:57:07 | 16 | attempting to obstruct in any fashion with electronic |
| 18:57:08 | 17 | monitoring.  That he is prohibited from possessing any |
| 18:57:13 | 18 | type of pornography, not just child pornography.  That |
| 18:57:16 | 19 | he will participate in the computer and internet |
| 18:57:20 | 20 | monitoring program by the probation office.  He must |
| 18:57:23 | 21 | provide that office with advance notification of any |
| 18:57:27 | 22 | computer or connected device to which he has access. |
| 18:57:30 | 23 | And that office may monitor all such equipment.  He will |
| 18:57:34 | 24 | participate in mental health intervention specifically |
| 18:57:37 | 25 | designed for defendants charged with sexual offenses. |

## A-326

|   |   |
|---|---|
| | 1 |
| 18:57:42 | 2 |
| 18:57:45 | 3 |
| 18:57:48 | 4 |
| 18:57:51 | 5 |
| 18:57:55 | 6 |
| 18:57:59 | 7 |
| 18:58:04 | 8 |
| 18:58:07 | 9 |
| 18:58:10 | 10 |

1            USA VS. N. TURNQUIST

2 He will comply with the mandates of that treatment

3 program and not leave such treatment until discharge is

4 agreed to by the probation office and the treating

5 agency.  He will not have contact with any child under

6 the age of 18 without the direct supervision of a

7 responsible adult.  If he has inadvertent contact

8 unsupervised with a child under the age of 18, he will

9 immediately report that to the probation office.  And,

10 finally, he will report within 72 hours to the pretrial

11 services office any contact which he has with law

12 enforcement personnel, including, but not limited to any

13 arrest, questioning or traffic stop.

14         Mr. Turnquist, do you understand all of

15 those conditions, sir?

16         THE DEFENDANT:  Yes, I do, your Honor.

17         MAGISTRATE JUDGE MCCARTHY:  And do you

18 understand that if you violate any of those conditions,

19 not only may your release be revoked, but your mother

20 will be at risk for losing $50,000 and her home?  Do you

21 understand that?

22         THE DEFENDANT:  Yes, I do, your Honor.

23         MAGISTRATE JUDGE MCCARTHY:  And you assure

24 me that will not happen?

25         THE DEFENDANT:  Absolutely not.  I'm

Timestamps (left margin): 18:57:42, 18:57:45, 18:57:48, 18:57:51, 18:57:55, 18:57:59, 18:58:04, 18:58:07, 18:58:10, 18:58:14, 18:58:18, 18:58:21, 18:58:24, 18:58:27, 18:58:28, 18:58:30, 18:58:31, 18:58:34, 18:58:37, 18:58:42, 18:58:42, 18:58:44, 18:58:46, 18:58:47

**A-327**

USA VS. N. TURNQUIST

18:58:49  2  committed to going to court to prove they did not

18:58:52  3  happen, your Honor.

18:58:53  4            MAGISTRATE JUDGE MCCARTHY:  All right.  I

18:58:54  5  ask, again, of his mother, ma'am, you've heard all of

18:58:57  6  these conditions, are you still willing to execute the

18:59:00  7  bond pledging your home to the extent of $50,000?

18:59:06  8            MRS. TURNQUIST:  Yes, I am, your Honor.

18:59:08  9            MAGISTRATE JUDGE MCCARTHY:  Okay.  Mr.

18:59:10  10  Bonanno, I think you wanted to -- I guess, Mr. Singer,

18:59:17  11  you had indicated there is a couple of other courts who

18:59:20  12  first have to give their approval before he would be

18:59:24  13  released in any event, is that correct?

18:59:27  14            MR. SINGER:  So, Judge, the Genesee County

18:59:29  15  court has already issued their bail order and that is

18:59:33  16  something as well as defense counsel advised Mr.

18:59:36  17  Turnquist not to post on until we resolved what was

18:59:42  18  happening in the three courts that was left.  So if he

18:59:44  19  posts in Genesee County at any time and satisfies that

18:59:48  20  bail condition, Erie County we're having a hearing at

18:59:52  21  2:30 on Wednesday afternoon next week where Judge

18:59:57  22  Hennigens will make a decision about bail in Erie

19:00:00  23  County.  I think if she grants bail, then what we were

19:00:03  24  prepared to advise Mr. Turnquist is that he go ahead and

19:00:07  25  post in those two counties.  Since in the federal case

# A-328

```
 1              USA VS. N. TURNQUIST
19:00:10   2   he is not posting anything other than the property, it
19:00:14   3   doesn't involve money, I think what I'm going to do is I
19:00:18   4   will coordinate with Mr. Bonanno to send the information
19:00:21   5   that I filed under seal to the asset forfeiture
19:00:25   6   division, who I normally work with on these types of
19:00:28   7   things, so they can be satisfied with the condition and
19:00:31   8   tell them don't post anything in the records yet until I
19:00:35   9   advise you otherwise, but just make sure that we're
19:00:38  10   ready to go on that.  That is what I'm prepared to do at
19:00:41  11   this point.
19:00:42  12              MR. BONNANO:  Judge --
19:00:42  13              MAGISTRATE JUDGE MCCARTHY:  Go ahead, Paul.
19:00:43  14              MR. BONNANO:  Thank you, Judge.  I was going
19:00:45  15   to ask for a brief stay so I can consult with my office
19:00:48  16   about the possibility of an appeal.  If we can have a
19:00:52  17   stay, Judge, through Wednesday, at least, since he is in
19:00:57  18   custody on the Erie County matter until then, that is
19:01:00  19   what I would ask for.
19:01:02  20              MAGISTRATE JUDGE MCCARTHY:  Yeah, that's
19:01:02  21   fine.  I mean, as a practical matter -- well, I'll leave
19:01:07  22   it to the two of you as to when you exchange the
19:01:11  23   financial information relative to his mother's property,
19:01:15  24   but, again, the government has to be satisfied that the
19:01:18  25   home, in fact, does have unencumbered $50,000 in equity
```

|    |    |
|----|----|
|    | 1 | USA VS. N. TURNQUIST |
| 19:01:24 | 2 | value.  So, in any event, I will stay my order until the |
| 19:01:33 | 3 | later of either 5 p.m. on Wednesday, next Wednesday, or |
| 19:01:42 | 4 | the government being satisfied as to the value of the |
| 19:01:46 | 5 | property reasonably satisfied, obviously.  Okay.  Does |
| 19:01:51 | 6 | that work for everybody? |
| 19:01:54 | 7 | MR. BONNANO:  That works for the government, |
| 19:01:55 | 8 | your Honor.  Thank you. |
| 19:01:56 | 9 | MR. SINGER:  And that works for the defense. |
| 19:01:58 | 10 | Judge, I had one question regarding a condition that I |
| 19:02:00 | 11 | wanted to clarify with the Court, if I could. |
| 19:02:03 | 12 | MAGISTRATE JUDGE MCCARTHY:  Yes. |
| 19:02:04 | 13 | MR. SINGER:  So, one of the conditions was |
| 19:02:06 | 14 | that you -- that he have no contact with anyone under |
| 19:02:09 | 15 | the age of 18. |
| 19:02:12 | 16 | MAGISTRATE JUDGE MCCARTHY:  Yes. |
| 19:02:12 | 17 | MR. SINGER:  Mr. Turnquist has children |
| 19:02:14 | 18 | under the age of 18, so as long as somebody who is an |
| 19:02:19 | 19 | adult is on the line on a phone call or, you know, |
| 19:02:23 | 20 | virtually or in person, that would satisfy that |
| 19:02:27 | 21 | condition. |
| 19:02:28 | 22 | MAGISTRATE JUDGE MCCARTHY:  Yes. |
| 19:02:28 | 23 | MR. SINGER:  I guess one question I did |
| 19:02:29 | 24 | have, you also put in a condition that he not have any |
| 19:02:33 | 25 | contact with any witness or potential witness in this |

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | USA VS. N. TURNQUIST                                          |
| 19:02:35 | 2  | case, and I think his children potentially may be a       |
| 19:02:39 | 3  | witness in the case.  I don't want him to violate a       |
| 19:02:43 | 4  | condition if he speaks to one of them.                    |
| 19:02:47 | 5  | MAGISTRATE JUDGE MCCARTHY:  Well, I'm not                 |
| 19:02:47 | 6  | going to prevent him from having contact with his         |
| 19:02:50 | 7  | children, but I will direct that he not have any          |
| 19:02:55 | 8  | communications with them regarding any aspect of this     |
| 19:02:58 | 9  | case unless -- unless it's in conjunction with you and    |
| 19:03:03 | 10 | the preparation of his defense, okay?                     |
| 19:03:06 | 11 | MR. SINGER:  Understand, Judge.                           |
| 19:03:07 | 12 | MR. BONNANO:  Judge, I would just point out               |
| 19:03:09 | 13 | there is a child, and I referenced this child in my       |
| 19:03:12 | 14 | papers, who is a very significant witness in this case.   |
| 19:03:17 | 15 | I don't think it would be appropriate for the defendant   |
| 19:03:20 | 16 | to be having contact with her.  And my understanding is   |
| 19:03:26 | 17 | that child does not reside with the defendant.  And I'm   |
| 19:03:31 | 18 | very concerned about contact with that witness.           |
| 19:03:38 | 19 | MAGISTRATE JUDGE MCCARTHY:  Rob.                          |
| 19:03:39 | 20 | THE DEFENDANT:  Well --                                   |
| 19:03:40 | 21 | MAGISTRATE JUDGE MCCARTHY:  Rob Singer, can               |
| 19:03:41 | 22 | you answer that?                                          |
| 19:03:41 | 23 | MR. SINGER:  I think that may have been one               |
| 19:03:43 | 24 | of the people that I potentially was talking about.  You  |
| 19:03:45 | 25 | know, I recognize that she may be a witness in the case,  |

|   |   |
|---|---|
|   | 1 |
| 19:03:50 | 2 |
| 19:03:54 | 3 |
| 19:03:59 | 4 |
| 19:04:02 | 5 |
| 19:04:05 | 6 |
| 19:04:07 | 7 |
| 19:04:10 | 8 |
| 19:04:11 | 9 |
| 19:04:13 | 10 |
| 19:04:14 | 11 |
| 19:04:16 | 12 |
| 19:04:17 | 13 |
| 19:04:21 | 14 |
| 19:04:28 | 15 |
| 19:04:28 | 16 |
| 19:04:29 | 17 |
| 19:04:35 | 18 |
| 19:04:37 | 19 |
| 19:04:40 | 20 |
| 19:04:41 | 21 |
| 19:04:44 | 22 |
| 19:04:48 | 23 |
| 19:04:48 | 24 |
| 19:04:59 | 25 |

USA VS. N. TURNQUIST

I recognize that she is also a child of Mr. Turnquist, and, so, I mean, that was part of my concern of raising this, Judge, is I wanted to get clarification of whether or not he is permitted to speak with her.

THE DEFENDANT:  There is actually a court order through Family Court that I'm allowed to.

MAGISTRATE JUDGE MCCARTHY:  Well, this is Federal Court, sir.

THE DEFENDANT:  So I'm letting the Court know, your Honor, that's all.

MAGISTRATE JUDGE MCCARTHY:  Okay.

MR. BONNANO:  Judge, I summarized her testimony in my papers that I filed yesterday and last week.

MAGISTRATE JUDGE MCCARTHY:  Paul, I'm trying to pull up your submission again.  Can you point me --

MR. BONNANO:  In the submission from yesterday.

MAGISTRATE JUDGE MCCARTHY:  What page?

MR. BONNANO:  I referenced her testimony on page five at the top.

MAGISTRATE JUDGE MCCARTHY:  No, I'm looking at page five.  Okay.  Wait a second.  Oh, that is referred to as minor two?

|   | USA VS. N. TURNQUIST |
|---|---|
| 19:05:01 2 | MR. BONNANO:  Yes. |
| 19:05:09 3 | MAGISTRATE JUDGE MCCARTHY:  She does not |
| 19:05:09 4 | reside with him currently, right? |
| 19:05:12 5 | MR. BONNANO:  I do not believe so, Judge. |
| 19:05:14 6 | MR. SINGER:  No, Judge, she does not. |
| 19:05:16 7 | MAGISTRATE JUDGE MCCARTHY:  All right.  For |
| 19:05:17 8 | now, I'm going to direct that he not have any contact |
| 19:05:21 9 | with her unless -- well, that he not have any contact |
| 19:05:25 10 | with her.  But I'll leave the door open to possibly |
| 19:05:29 11 | modifying that condition on further information from the |
| 19:05:32 12 | parties.  Okay? |
| 19:05:33 13 | MR. BONNANO:  Thank you, Judge. |
| 19:05:34 14 | MR. SINGER:  Thank you. |
| 19:05:36 15 | MAGISTRATE JUDGE MCCARTHY:  All right. |
| 19:05:36 16 | Anything further that I need to address today, counsel? |
| 19:05:40 17 | MR. BONNANO:  No, your Honor.  Thank you. |
| 19:05:44 18 | MR. SINGER:  No, Judge.  I don't believe so. |
| 19:05:46 19 | MAGISTRATE JUDGE MCCARTHY:  Okay.  And just |
| 19:05:47 20 | back to the underlying case, where do we stand in terms |
| 19:05:51 21 | of further deadlines? |
| 19:05:54 22 | MR. SINGER:  Judge, I filed motions in my |
| 19:05:57 23 | discovery motion on the 14th.  Mr. Bonanno has to |
| 19:06:04 24 | respond to that per the scheduling order that you put in |
| 19:06:07 25 | place. |

# A-333

```
               1              USA VS. N. TURNQUIST
19:06:07       2              MAGISTRATE JUDGE MCCARTHY:  Okay.  We got
19:06:08       3    that in place then.  All right.  Thank you all.
19:06:11       4              MR. BONNANO:  Thank you, Judge.
19:06:12       5              MR. SINGER:  Thank you, Judge.
19:06:13       6              MAGISTRATE JUDGE MCCARTHY:  Bye-bye.
               7                      *     *     *
               8              CERTIFICATE OF REPORTER
               9
              10      I certify that the foregoing is a correct transcript
              11    of the record to the best of my ability of proceedings
              12    transcribed from the audio in the above-entitled matter.
              13
              14    S/ Karen J. Clark,  RPR
              15    Official Court Reporter
              16
              17
              18
              19
              20
              21
              22
              23
              24
              25
```

# A-334

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

        v.                                      21-CR-15-JLS-JJM

NICHOLAS TURNQUIST,

                      Defendant.

_____

## NOTICE OF MOTION AND MOTION FOR REVIEW OF
## MAGISTRATE JUDGE'S DETERMINATION ON DETENTION

The United States of America by and through its attorney, James P. Kennedy, Jr.,
United States Attorney for the Western District of New York, and the undersigned Assistant
United States Attorney, respectfully moves, pursuant to Title 18, United State Code, Section
3145(a)(1), for an Order revoking Magistrate Judge Jeremiah J. McCarthy's Order releasing
the defendant, entered on September 17, 2021; and the United States of America further
moves for an Order staying said Order of Magistrate Judge Jeremiah J. McCarthy until such
time as the Court can hear and determine the government's motion for review of the
Magistrate Judge's determination on detention.

**IN SUPPORT THEREOF**, the government sets forth a memorandum, incorporated
herein by reference.

# A-335

**WHEREFORE**, it is respectfully requested that the Court:

1) Stay the order of Magistrate Judge Jeremiah J. McCarthy releasing the defendant until such time as the District Court can hear and determine this motion; and

2) Revoke Magistrate Judge Jeremiah J. McCarthy's September 17, 2021 order releasing the defendant from custody and continue defendant's detention pending trial.

DATED: Buffalo, New York, September 22, 2021.

JAMES P. KENNEDY, JR.
United States Attorney

By: s/ PAUL E. BONANNO
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5873
Paul.Bonanno@usdoj.gov

# A-336

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

               v.                                               21-CR-15-JLS-JJM

NICHOLAS TURNQUIST,

                          Defendant.

_____

### GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO REVOKE THE MAGISTRATE JUDGE'S ORDER RELEASING THE DEFENDANT

The United States of America by and through its attorneys, James P. Kennedy, Jr., United States Attorney for the Western District of New York, and Paul E. Bonanno, Assistant United States Attorney, hereby files this Memorandum of Law in Support of its Motion for Review of Magistrate Judge Jeremiah J. McCarthy's Order releasing the defendant from custody. (Dkt. 37)

### BACKGROUND AND PROCEDURAL HISTORY

#### The Federal Charges Against The Defendant

On November 2, 2020, defendant was charged by criminal complaint with violating 18 U.S.C. § 2423(a) (transportation of a minor with intent to engage in criminal sexual activity). As set forth in the affidavit of FBI Special Agent Randall E. Garver filed in support of the criminal complaint, the defendant is believed to have sexually abused and repeatedly raped his minor stepdaughter, identified as Victim 1, over a period of years, beginning when

# A-337

Victim 1 was approximately 12 years old. (Dkt. 1.) The affidavit further alleged that the defendant took Victim 1 on a number of out-of-state trips for the purpose of sexually abusing her. This included trips to Splash Lagoon in Erie, Pennsylvania, Great Wolf Lodge in Canada, an aquarium in Baltimore, Maryland, Disney World in Orlando, Florida, and a water park in Sandusky, Ohio.

On November 6, 2020, an initial appearance was held on the criminal complaint and Federal Public Defender Fonda Kubiak was appointed as counsel. The government moved for detention and noted that a presumption of detention applied. The defendant deferred on the question of detention pending resolution of the circumstances of his state custody. *See* Dkt. 4, Minute Entry from Nov. 6, 2020.

On February 3, 2021, a federal grand jury returned an Indictment charging defendant with one violation of 18 U.S.C. § 2423(a) (transportation of a minor with intent to engage in criminal sexual activity). The defendant was arraigned on the Indictment on February 11, 2021. Assistant Federal Public Defender Kubiak was relieved as counsel and Robert Singer was appointed to represent defendant. The government again moved for detention. *See* Dkt. 12, Minute Entry from Feb. 11, 2021. On February 25, 2021, the defendant agreed to waive a detention hearing and reserved the right to seek bail upon a change of circumstances with his state bail. *See* Dkt. 14, Minute Entry from Feb. 25, 2021.

# A-338

On August 21, 2021, the defendant filed a motion for release from custody based on the dismissal of charges against him in Wyoming County Court (discussed below).  (Dkt. 19).  The government filed an opposition to the defendant's release motion.  (Dkt. 21)   On September 9, 2021, Magistrate Judge McCarthy heard argument from the parties and entered an order denying the release motion without prejudice.  (Dkt. 29)  (A copy of the transcript of the hearing on the release motion is attached hereto as Exhibit A.)

The defendant filed a second release motion on September 13, 2021, in which he proposed release with the posting of a $50,000 bond secured by equity in the defendant's mother's house.  (Dkt. 30)  The government again filed an opposition to the release motion.  (Dkt. 35)  Magistrate Judge McCarthy heard argument on the second release motion on September 17, 2021.  (A copy of the transcript of the hearing on the release motion is attached hereto as Exhibit B.)  At the conclusion of the hearing, Magistrate Judge McCarthy found that the bail package proposed by the defendant "would reasonably assure" the Court that the defendant would not pose a risk of flight or danger to the community.   Exhibit B at 14.  Consequently, Magistrate Judge McCarthy ordered the defendant released on conditions, including home detention and the posting of a bond in the amount of $50,000 secured by equity in defendant's mother's house.  The Court stayed the release order until 5:00 p.m. on September 22, 2021.  (Dkt. 37)

## The State Charges Against The Defendant

In addition to the federal charges, the defendant was indicted on state sexual assault and rape charges in Wyoming County, Genesee County, and Erie County.

# A-339

On July 28, 2020, the defendant was indicted by a Wyoming County Grand Jury on two counts of Predatory Sexual Assault Against a Child, in violation of New York State Penal Law Section 130.96, and one count of Rape in the Second Degree, in violation of New York State Penal Law Section 130.30(1).  The predatory sexual assault charges alleged that the defendant committed a course of sexual conduct and rape against a child under the age of 13 years old.  The case went to trial in July 2021.  At trial, Victim 1 testified that the defendant began sexually assaulting and raping her years earlier, sometime after she was badly injured by a reckless driver and shortly before the family took a trip to Disney World.  (A copy of the transcript of Victim 1's trial testimony is attached hereto as Exhibit C.)  Victim 1 recalled the trip to Disney World occurred in 2011, at which time Victim 1 would have been 12 years old.  On cross-examination, the defense produced evidence that the trip to Disney World actually occurred in 2012 – when Victim 1 was 13 years old.  Because the predatory sexual assault charges required as an element that the victim be younger than 13 years old at the time of the sexual assault, the trial judge granted the defendant's motion for a trial order of dismissal.

On February 4, 2021, defendant was indicted by a Genesee County Grand Jury on one count of Rape in the Third Degree, in violation of New York State Penal Law Section 130.25(2), and one count of Sexual Abuse in the First Degree, in violation of New York State Penal Law Section 130.65(1).  The defendant faces up to four and seven years in state prison on these charges, respectively.  Trial has not been scheduled yet.  Bail has been set in the Genesee County case in the amount of $10,000 cash, $20,000 bond, or $30,000 secured surety bond.

# A-340

On June 30, 2021, the defendant was indicted by an Erie County Grand Jury on three counts of Rape in the Third Degree, in violation of New York State Penal Law Section 130.25(2). The defendant faces up to four years in state prison on each of these rape counts. Trial has not been scheduled yet. The defendant is currently held without bail in Erie County, although defendant has filed a motion for release. The motion is pending.

## STANDARD OF REVIEW

Review of a magistrate judge's release order is *de novo*. "[W]here a defendant is ordered released by a magistrate judge, the government may, under 18 U.S.C. § 3145(a)(1), move for revocation of the release order before the district court. Upon such motion, the district court must perform a *de novo* review of the magistrate judge's release order." *United States v. Boorman*, 130 F. Supp. 2d 394, 398 (W.D.N.Y. 2001) (citing *United States v. Leon*, 766 F.2d 77, 80 (2d Cir.1985)). In *United States v. Leon*, the Second Circuit held that a district court should "not simply defer to the judgment of the magistrate, but reach its own independent conclusion." *Leon*, 766 F.2d 77, 80 (2d Cir.1985); *see also United States v. Colombo*, 777 F.2d 96, 100 (2d Cir. 1985). The reviewing district court is also not limited to the record made at the magistrate court. Rather, the Court may take additional evidence or conduct a new evidentiary hearing altogether. "When making its de novo review, the district court may rely on the record of the proceedings before the magistrate judge and may also accept additional evidence." *Boorman*, 130 F. Supp. 2d 394, 398 (W.D.N.Y. 2001); *see also Colombo* 777 F.2d 96, 98 (2d Cir. 1985).

# A-341

## **GOVERNING STANDARDS**

When the government's motion for detention is based upon a risk of flight assessment, the government must establish, by a preponderance of the evidence, "the defendant, if released, presents an actual risk of flight." *United States v. Sabhnani*, 493 F.3d 63, 75 (2d. Cir. 2007) (citation omitted). When the government's motion for detention is based upon the defendant's dangerousness, it "has the burden of establishing defendant's dangerousness by clear and convincing evidence." *United States v. Chimurenga*, 760 F.2d 400, 403 (2d Cir. 1985); *see also* 18 U.S.C. § 3142(f).

The Indictment in this case charges the defendant with an offense involving a minor victim in violation of Title 18, United States Code, Section 2423(a). Consequently, there is a presumption that no condition or combination of conditions will reasonably assure the defendant's future appearance in Court and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(E).

The defendant bears the burden of producing evidence to rebut the presumption set forth in Section 3142(e)(3)(E). *See United States v. Thompson*, 436 F. Supp.3d 631, 635 (W.D.N.Y. 2020) ("The presumption shifts to a defendant 'a limited burden of production— not a burden of persuasion—to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight.'" (*citing United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)).

# A-342

Once a defendant introduces rebuttal evidence, the presumption does not disappear altogether, but rather continues to be weighed along with other factors. *See United States v. Rodriguez*, 950 F. 2d 85, 88 (2d Cir. 1991).

## ARGUMENT

In making a determination as to whether a person should be held without bail, courts are to consider the four factors listed in 18 U.S.C. § 3142(g): (1) "the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a minor victim"; (2) the "weight of the evidence against the person"; (3) the "history and characteristics of the person"; and (4) the "nature and seriousness of the danger to any person or the community that would be posed by the person's release." A review of these factors supports the presumption that the defendant poses a danger to the community and a risk of flight.

### 1. The nature and circumstances of the offense are very serious.

There is no question that the defendant is charged with a serious crime. The Indictment charges a crime of violence involving a minor. 18 U.S.C. § 3156(a)(4)(C). The specific allegation here is that the defendant purposely took his 16 year-old stepdaughter – a child in his care – out of state, away from her mother, so that he could have illicit sexual activity with her. A conviction for a violation of 18 U.S.C. § 2423(a) carries with it a mandatory minimum term of incarceration of 10 years and a maximum term of incarceration of life.

# A-343

2.      **The evidence supporting the charges is strong and compelling.**

Much of the evidence against defendant is described in the affidavit of Special Agent Randall Garver that was filed in support of the criminal complaint in this case.  For example, Special Agent Garver's affidavit references various witnesses against the defendant, including the defendant's biological daughter identified as Minor 2.  Minor 2 told the interviewers from the Child Advocacy Center that she witnessed defendant have sexual intercourse with Victim 1.  Minor 2 said "he would force her to do things" that adults do.  Minor 2 recalled a trip to Pennsylvania that took place when she was five years old and in the middle of kindergarten.  She recounted the defendant and Victim 1 having some clothing on but Victim 1 being on top of defendant, facing him, her legs spread over defendant, and that the two were under a blanket.  Minor 2 heard Victim 1 tell defendant to stop but he told her that he was the adult and would do what he wanted.  *See* Dkt. 1 ¶ 14.

Notably, Special Agent Garver's affidavit also describes a call that the defendant made from the Wyoming County Jail to his wife, Carly Turnquist.  The call was recorded and provided to FBI by the Wyoming County District Attorney's Office.  During the call, defendant told his wife, "[Victim 1's] not saying that it was statutory rape, she's not saying that it was just rape, she's saying that we forced and left marks on her."  Defendant then told his wife to look up the age of consent in Pennsylvania, Ohio, Maryland, South Carolina, Florida, and Canada, *i.e.*, the places that he traveled to with Victim 1.  Defendant says to his wife at one point, "let's say Pennsylvania is 15," then, according to the defendant, law enforcement cannot charge him with a crime.  (Dkt. 1 ¶ 12)  This jail call corroborates the

# A-344

charge here, which is that the defendant took Victim 1 to Splash Lagoon in Pennsylvania and had sex with her there when she was only 16 years old.  The jail call also suggests that defendant had sex with Victim 1 in various states and that he is concerned he can be charged with statutory rape in those states depending on what the age of consent is under their laws.

Another notable item of evidence against defendant is a controlled phone call that Victim 1 made to defendant on March 17, 2020, from the East Aurora Police Department. Throughout the controlled phone call, Victim 1 is emotional and tearful.  She asks the defendant, "What made you want to do things with me? Like, I wasn't even pretty." Defendant responds, "Because you wanted to.  Like, what – I'm not going to sit here and keep having the discussion because I don't like the fact of any of it either, so.  It is not something that I'm exactly f***ing comfortable with…"  Victim 1 later asks, "Okay. But realizing now when I'm older, how was it consensual at the ages that I was? … I was a kid. Like do you – is that what you regret, or do you regret, like, the whole thing?  Do you regret the young part, do you regret the old part, do you regret the whole thing? Like, all you keep saying is, oh, I regret it. Okay. So what do you regret?"  To which defendant responds, "That it happened."  Victim 1 later says, "The whole point of this phone call was for you to help me figure out how I'm supposed to tell my husband all of this."  Defendant responds, "And – and that – that was me telling you that – if the times that it happened, it – I --- I regret doing it, and I have trouble myself understanding it.  How am I supposed to help you if I can't even help myself? … [Y]ou don't think that I sit there and f***ing want to smash my head against the wall?  Knowing that I – I raised you, and I – I let things happen.  Like, no.  I feel like a f***ing piece of crap, but nothing I can think of and nothing that I can do is going to change

# A-345

that that happened." These statements by the defendant reflect his consciousness of guilt and amount to an admission that he had sex with Victim 1 when she was "a kid." (A copy of the relevant portion of the transcript of this controlled call is attached hereto as Exhibit D.)

Further evidence against the defendant is his admission to East Aurora police during an interview shortly before his arrest that he had sex with Victim 1 – his stepdaughter – although he insisted to the police it was only when she was 17 or 18 years old. The defendant further admitted that he had sex with Victim 1 only after his girlfriend at the time (now his wife) Carly Turnquist moved into the house and the three of them engaged in sexual activity together.

This is just some of the evidence against the defendant. There is significant other evidence against him, as set forth in Special Agent Garver's affidavit attached to the criminal complaint. (Dkt. 1)

**3. Defendant's history and characteristics favor detention.**

The defendant's character and past conduct indicate that he poses a danger to the community. Not only did he repeatedly rape and sexually abuse Victim 1, but Victim 1 testified at trial in Wyoming County that the defendant threatened Victim 1 and her mother, grandmother, and sisters with violence if Victim 1 told on him. He also committed acts of violence against Victim 1, hitting her, punching her, and at one point throwing her down a hill in their yard. *See* Exhibit C, trial transcript, direct examination of Victim 1, pages 38-39,

# A-346

43.   Indeed, the very day that Victim 1 testified at trial in Wyoming County Court, the defendant's wife tried to run Victim 1 off the road, for which she has been charged with felony witness tampering.[1]  Given that there already has been an instance of witness intimidation in this case, and given the defendant's history of threats and violence towards Victim 1, the defendant should remain in custody pending trial.

### 4.   Defendant's release poses a serious risk to children.

The only "evidence" the defendant brought forward to rebut the presumption of dangerousness and flight after Magistrate Judge McCarthy denied the original release motion is defendant's mother's ability to post a $50,000 bond secured by her house.   This "evidence" is not "'contrary to the presumed fact' of his dangerousness" and flight risk. *United States v. Hicks*, 15-CR-33-A, 2018 WL 11579881, at *7 (W.D.N.Y. May 5, 2017) (quoting *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991)).

With respect to dangerousness, defendant can still have access to minor children if he is released.  The defendant has four underage daughters (two biological daughters and two stepdaughters).  The Magistrate Judge's release order allows the defendant to have contact with three of the four daughters (one is a witness, as noted above, and he is not permitted to have contact with her).  While the release conditions require the contact to be supervised, that safeguard is insufficient here where the defendant's wife, according to Victim 1's trial

---

[1] The felony complaint filed in Wyoming County against Carly Turnquist states that as Victim 1 drove home from court after testifying, Carly Turnquist drove her car close behind Victim 1's car, passed Victim 1 in a no passing zone and stared at her, and then cut in front of Victim 1's car and braked suddenly.  The felony complaint against Carly Turnquist is attached hereto as Exhibit E.  Trial has not been scheduled yet.

# A-347

testimony in Wyoming County, joined in the sexual abuse of Victim 1.  *See* Exhibit C, trial

transcript, direct examination of Victim 1, at 42-43; Dkt. 1 ¶ 7.


With respect to the risk of flight, even the strictest conditions of release, such as home

incarceration with GPS monitoring, cannot prevent a motivated defendant from cutting his

ankle monitor and attempting to flee. When faced with powerful evidence of his guilt—

together with the prospect of a mandatory minimum sentence of 10 years and a recommended

post-trial sentence of life imprisonment—defendant would have an incredibly strong

motivation to cut his ankle monitor and attempt to flee, either within the United States or

internationally. No conditions of release can minimize that incentive, and no conditions of

release can ensure that defendant does not cut his ankle monitor.  Defendant faces a lengthy

prison term.  He has little to lose by attempting to flee and everything to gain.


In short, release of the defendant poses a serious risk of danger to the community.  He

is charged with a crime for which Congress imposed a presumption that the defendant is a

danger to the community.  While conditions such as the posting of security and electronic

monitoring mitigate against the risk of flight, they do not sufficiently protect the community.

*See United States v. Ferranti*, 66 F.3d 540, 543 (2d Cir. 1995) (finding that a $1,000,000 bond

would not deter the defendant's danger to the community); *Rodriguez*, 950 F.2d at 89 ("The

bail package offered by Rodriguez, although it may reasonably assure the appearance of

Rodriguez at trial, will not reasonably assure the safety of the community.").

# A-348

## <u>CONCLUSION</u>

For the reasons stated above, the government respectfully requests that the District Court revoke Magistrate Judge McCarthy's release order and order that the defendant be detained pending trial.

DATED: Buffalo, New York, September 22, 2021.

JAMES P. KENNEDY, JR.
United States Attorney

BY:    s/ PAUL E. BONANNO
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York  14202
716-843-5873
Paul.Bonanno@usdoj.gov

A-349

# EXHIBIT D

# A-350

VICTIM 1: Okay. Well, there -- I need to talk to you, like -- like, Justin's [Victim 1's husband] starting to ask questions, like. He's -- how am I supposed to tell him that --

NICHOLAS TURNQUIST: I don't know what you want me to tell you. If you want to talk, then come over, talk. If you wanted Riley to see Lyla, you can take her anytime you want.

VICTIM 1: I just need to know your input here. Like, he want -- like, he wants to know if -- he knows that I did things with you, okay. Like --

NICHOLAS TURNQUIST: Right.
VICTIM 1: He wants to know if I -- how old I was, and if I was a virgin, and all this other shit. Like, how am I supposed to explain this to him? Like, help me.

NICHOLAS TURNQUIST: I don't know how you're supposed to explain anything. I -- I don't. I -- I'm -- I feel -- this is what I'm telling you. I still don't know how to explain shit that I've seen. I still beat myself up over decisions that I've made as, far as shit when I was 13 and 14-years-old that fucking caused me ever to be able to be a cop. That I sit there, and I can't get over because I -- I beat myself up going, if I had just did that differently.

VICTIM 1: That's when you started doing stuff with me, though.

NICHOLAS TURNQUIST: When I was 13 or 14, I didn't even know you.

VICTIM 1: No. You're --

NICHOLAS TURNQUIST: I don't know what you're talking about.

VICTIM 1: Like, you're saying you've had stuff going on since 13 and 14, so have I.

NICHOLAS TURNQUIST: That's crap. Like, I -- I -- I don't know what you want me to tell you here. Like if --

VICTIM 1: Nick, I -- this is me and you, okay? I don't know if you're around Carley or what, but I just -- why can't you just talk to me one-on-one for five seconds?

NICHOLAS TURNQUIST: I am talking to you.

VICTIM 1: I need your help, Nick.

NICHOLAS TURNQUIST: I'm -- [Victim 1], I am talking to you. I don't know what you want me to say to you.

VICTIM 1: Like, it's not like I can go to a counsellor and be, like, oh, I had sex with my stepdad from, fucking, when I was a little kid to fucking --

NICHOLAS TURNQUIST: Oh my God. Okay.

VICTIM 1: -- until I was 18.

NICHOLAS TURNQUIST: And then -- and then if that's what you feel you need to do, then go ahead, because that's crap, but.

VICTIM 1: No, it's not what I need to do. Nick, could you shut the fuck up here? Like, let's be serious. I don't know what the fuck you think is going on here, but you're not bullshitting me right now. Okay. I'm trying to have a conversation with you one-on-one. I don't know if it's because I'm on speaker and you're with Carley or you're next to her or what.

# A-351

NICHOLAS TURNQUIST: No, I'm in the fucking bedroom by my damn self. I don't need this (inaudible)

VICTIM 1: Well, what the fuck, Nick, okay? I don't need this shit right now.

NICHOLAS TURNQUIST: I don't either. Like I don't know what the hell you want me to tell you.

VICTIM 1: I want you to one-on-one --

NICHOLAS TURNQUIST: (Inaudible) Justin come over and I'll talk to him, too. You want to meet somewhere, I'll meet somewhere. If you want to hang out with Riley and Lyla, then you (inaudible) discuss that with her. I -- I -- I'm giving you options here.

VICTIM 1: Can you at least just tell me why?

NICHOLAS TURNQUIST: Why --

VICTIM 1: What made you want to do something with me?

NICHOLAS TURNQUIST: Why what?

VICTIM 1: What made you want to do things with me? Like, I wasn't pretty.

NICHOLAS TURNQUIST: Because you wanted to. Like, what -- I'm not going to sit here and keep having the discussion because I don't like the fact of any of it either, so. It is not something that I'm exactly fucking comfortable with. Do you think, like, what I -- I sit there and love that, or -- or -- fucking what? No.

VICTIM 1: I'm not saying you did, I just want some input here on how I'm supposed to get through it.

NICHOLAS TURNQUIST: Well, because it was a fucking consensual thing, and it fucking happened, and unfortunately, it can't be taken back.

VICTIM 1: Yes.

NICHOLAS TURNQUIST: So.

VICTIM 1: But yeah, it was --

NICHOLAS TURNQUIST: You think that I fucking sit there and don't fucking regret very second of it? Well, sure, but what the fuck. I -- nothing I do or say can get rid of that. Nothing I say or do –

VICTIM 1: Okay. But realizing now when I'm older, how was it consensual at the ages that I was?

NICHOLAS TURNQUIST: Seriously?

VICTIM 1: Yeah. It could have been where it was whatever, but I didn't know any better.

NICHOLAS TURNQUIST: Okay.

VICTIM 1: I was a kid. Like, do you -- is that what you regret, or do you regret, like, the whole thing? Do you regret the young part, do you regret the old part, do you regret the whole thing? Like, all you keep saying is, oh, I regret it.

NICHOLAS TURNQUIST: Yeah.

# A-352

VICTIM 1:  Okay.  So what do you regret?

NICHOLAS TURNQUIST:  That it happened.

VICTIM 1:  Wow.  Okay.  All right.

NICHOLAS TURNQUIST:  I mean, what was the point of this phone call, just to ask me that?

VICTIM 1:  No.  The point was for you to help me here.  But if you regretted the whole thing, then why didn't it stop?

NICHOLAS TURNQUIST:  First of all, it did.  So I don't know where you're coming from.

VICTIM 1:  Yeah, when I moved.  [Victim 1 moved out when she was 18.]

NICHOLAS TURNQUIST:  I don't know half of where the hell you're coming from right now so. (Inaudible)

VICTIM 1:  When I moved is when it  stopped.  The question -- whole point of this phone call wasn't for me to find out that you regretted it.  The whole point of this phone call was for you to help me figure out how I'm supposed to fucking tell my husband all of this.

NICHOLAS TURNQUIST:  And -- and that -- that was me telling you that -- if the times that it happened, it -- I -- I regret doing it, and I have trouble myself understanding it.  How am I supposed to help you if I can't even help myself?

VICTIM 1:  I don't know, I guess.  I was hoping that I had something calling  you.

NICHOLAS TURNQUIST:  Well, and I'm trying to, but you don't think that I sit there and fucking want to smash my head against the wall?  Knowing that I -- I raised you, and I -- I let things happen?  Like, no.  I feel like a fucking piece of crap, but nothing I can think of and nothing that I can do is going to change that that happened.

A-353

# EXHIBIT E

# A-354

STATE OF NEW YORK                                      COUNTY OF *WYOMING*

*TOWN*                    COURT                        *TOWN*    of   *WARSAW*

Defendant: *NA*                                        Alleged Victim:  *NA*
(Relationship to alleged victim)                                       (Relationship to defendant)

---

THE PEOPLE OF THE STATE OF NEW YORK

-- VS.--                              Date of Birth

*CARLY M TURNQUIST*                   *09/20/1986*

Defendant(s)

---

**A C C U S A T I O N**

BE IT KNOWN THAT, by this  *FELONY COMPLAINT* ,  *COLIN P REAGAN*

as the Complainant herein,  *STATIONED*    at  *WYOMING CO. SHERIFF*

accuses the above mentioned Defendant(s), with having   COMMITTED the *FELONY*

of  *TAMPERING WITH A WITNESS IN THE THIRD DEGREE*         in violation of Section   *215.11*

Subdivision  *01*    of the  *PENAL*         Law of the State of New York.

That on or about _____ *07/19/2021* _____ at about _____ *04:30 PM* _____

in the *TOWN*    of *WARSAW* , County of  *WYOMING* , the defendant(s)

did intentionally, knowingly and unlawfully commit the felony of TAMPERING WITH A WITNESS-3RD: PREVENT TESTIMONY -FEAR OF INJURY.  A person is guilty of tampering with a witness in the third degree when, knowing that a person is about to be called as a witness in a criminal proceeding:1. He wrongfully compels or attempts to compel such person to absent himself from, or otherwise to avoid or seek to avoid appearing or testifying at such proceeding by means of instilling in him a fear that the actor will cause physical injury to such person or another person; Tampering with a witness in the third degree is a class E felony.

**F A C T S**

ON JULY 19, 2021 AT OR AROUND 1630HRS WHILE ON STATE ROUTE 20A IN THE TOWN OF WARSAW, COUNTY OF WYOMING, STATE OF NEW YORK, CARLY M. TURNQUIST DID KNOWING ATTEMPT TO COMPEL MIRANDA L. KRANZ TO ABSENT HERSELF, OR TO SEEK TO AVOID TESTIFYING, AS A WITNESS IN A CRIMINAL TRIAL, BY MEANS OF FOLLOWING MIRANDA KRANZ IN A VEHICLE, WHILE MIRANDA KRANZ WAS THE DRIVER OF ANOTHER VEHICLE, AND DID FOLLOW MIRANDA KRANZ WHILE OPERATING HER VEHICLE ERRATICALLY BY MEANS OF FOLLOWING TOO CLOSELY, PASSING IN A NO PASSING ZONE, PACING MIRANDA KRANZ AND STARING AT HER WHILE PASSING HER, CUTTING IN FRONT OF MIRANDA KRANZ WHEN AN ONCOMING VEHICLE WAS APPROACHING, AND THEN RECKLESSLY BRAKING FOR NO APPARENT LEGITIMATE PURPOSE NEARLY CAUSING TWO ACCIDENTS WHILE DOING SO, AND SAID ACTS DID INSTILL FEAR IN MIRANDA KRANZ THAT CARLY TURNQUIST WOULD CAUSE PHYSICAL INJURY TO MIRANDA KRANZ BY MEANS OF FORCING A MOTOR VEHICLE COLLISION TO OCCUR, ALL CONTRARY TO THE PROVISIONS OF THE STATUTE IN SUCH CASE MADE AND PROVIDED.

The above allegations of fact are made by the Complainant herein on direct knowledge and/or upon infomation and belief, with the sources of Complainant's information and the grounds for belief being the facts contained in the attached SUPPORTING DEPOSITION(s) of:  *MIRANDA KRANZ, COLLEEN MARVEL*

**N O T I C E**

In a written instrument, any person who knowingly makes a false statement which such person does not believe to be true has committed a crime under the laws of the State of New York punishable as a Class A Misdemeanor.   **(PL 210.45)**

Affirmed under penalty of perjury

this _ 20 TH _ day of _____ *JULY ,  2021* _____

--OR--

Subscribes and sworn to before me this _____ day of
_____, 20 _____

COMPLAINANT -

# A-355

SUPPORTING DEPOSITION (CPL §100.20)                                    PAGE 1   OF 2

THE PEOPLE OF THE STATE OF NEW YORK
-- vs.

*CARLY M TURNQUIST*

**Defendant(s)**

| *INCIDENT LOCATION:* | *LOCATION OF DEPOSITION:* |
|---|---|
| STATE OF NEW YORK *LOCAL CRIMINAL* COURT | STATE OF NEW YORK |
| COUNTY OF *WYOMING* | COUNTY OF *WYOMING* |
| *TOWN* of *WARSAW* | *TOWN* of *WARSAW* |

| On | Date 07/20/2021 | at | Time Started 09:10 AM | I, | Full Name: *MIRANDA L KRANZ* |
|---|---|---|---|---|---|
| Date of Birth 06/02/1998 | | No. and Street *ADDRESS KNOWN TO WCSO* | | C/T/N | State |

**State The Following:**

*MY NAME IS MIRANDA L. KRANZ, AND I AM A VICTIM IN A CRIMINAL ACTION IN WHICH I WAS TESTIFYING AT ON JULY 19, 2021. I WAS TESTIFYING AT THE WYOMING COUNTY COURT HOUSE AGAINST THE DEFENDANT, NICHOLAS TURNQUIST. AT THE END OF THE DAY ON JULY 19, 2021 AT AROUND 1630HRS, I LEFT THE WYOMING COUNTY COURT HOUSE. I DROVE SIDE STREETS TO GET TO STATE ROUTE 20A, AND I DROVE WEST TO LEAVE THE VILLAGE. BY THE TIME I GOT TO THE WEST HILL BY THE RAILROAD TRACKS, I NOTICED AN OLDER RED FORD FOCUS TAILGATING ME. I COULD CLEARLY SEE INTO THE VEHICLE THAT THE DRIVER WAS CARLY M. TURNQUIST, THE DEFENDANT'S WIFE. I CONTINUED WEST ON STATE ROUTE 20A AND CALLED COLLEEN MARVEL FROM THE DA'S OFFICE FOR HELP. WHILE TALKING TO COLLEEN, I CONTINUED WEST INTO THE TOWN OF WARSAW. I WAS TRAVELING AT SPEEDS OF 60MPH TO 65MPH ON STATE ROUTE 20A IN THE TOWN OF WARSAW. WE PASSED A CHURCH WHICH SAID "IMMANUEL" ON THE SIGN, AND CARLY TURNQUIST WAS STILL TAILGATING ME. AFTER WE PASSED THIS CHURCH, CARLY TURNQUIST BEGAN TO PASS ME AND DID PASS ME IN A NO PASSING ZONE. WHILE PASSING ME, CARLY TURNQUIST PULLED BESIDE ME AND PACED MY VEHICLE. CARLY TURNQUIST TURNED HER HEAD AND LOOKED AT ME WHILE DRIVING NEXT TO ME. A VEHICLE THEN APPEARED TRAVELING THE OPPOSITE DIRECTION FROM US, SO CARLY TURNQUIST THEN COMPLETED THE PASS AND PULLED IN FRONT OF ME. DURING THIS TIME I WAS AFRAID THAT CARLY TURNQUIST WAS GOING TO CAUSE AN ACCIDENT, AND I HAD SLOWED DOWN TO APPROXIMATELY 45MPH. ONCE CARLY TURNQUIST WAS IN FRONT OF ME, I OBSERVED*

## Notice

(Penal Law §210.45)

In a written instrument, any person who knowingly makes a false statement which such person does not believe to be true has committed a crime under the laws of the state of New York punishable as a Class A Misdemeanor.

Affirmed under penalty of perjury

this   20   TH   day of   JULY   ,  2021

- OR -

* Subscribed and Sworn to before me

this _____ day of _____

_____
(SIGNATURE OF DEPONENT)

_____
(WITNESS)

*Sgt Colin Reagan*
(NAME OF PERSON TAKING DEPOSITION)

| Time Ended 07/20/2021 | 09:20 AM |
|---|---|

* This form need be sworn to only when specifically required by the court

# A-356

SUPPORTING DEPOSITION (CPL §100.20)                                          PAGE 2  OF 2

---

**State The Following:**

*AS SHE BRAKE CHECKED ME TWO TIMES. BOTH OF THESE TIMES, I WAS TRAVELING AT APPROXIMATELY 45MPH, AND I SLOWED DOWN. IF I HAD NOT SLOWED DOWN, I WOULD HAVE STRUCK HER VEHICLE. COLLEEN MARVEL TOLD ME TO PULL OVER, AND I PULLED OVER JUST EAST OF THE ORANGEVILLE TOWN LINE. I OBSERVED AS CARLY TURNQUIST'S BRAKE LAMPS CAME ON WHEN I PULLED OVER, AND SHE WENT OVER THE HILL AND OUT OF SIGHT. I DID NOT SEE CARLY TURNQUIST'S VEHICLE AGAIN. I FEEL THAT CARLY TURNQUIST DID THESE ACTS INTENTIONALLY AND KNOWING THAT IT WAS ME DRIVING MY CAR.*

**Notice**
(Penal Law §210.45)

In a written instrument, any person who knowingly makes a false statement which such person does not believe to be true has committed a crime under the laws of the state of New York punishable as a Class A Misdemeanor.

Affirmed under penalty of perjury

this ___20___ **TH** day of ___JULY___ , ___2021___

\- OR -

\* Subscribed and Sworn to before me

this _____ day of _____

_____
(SIGNATURE OF DEPONENT)

_____
(WITNESS)

_____
(NAME OF PERSON TAKING DEPOSITION)

Time Ended
07/20/2021          09:20 AM

\* This form need be sworn to only when specifically required by the court

# A-357

SUPPORTING DEPOSITION (CPL §100.20)                                        PAGE 1  OF 1

---

THE PEOPLE OF THE STATE OF NEW YORK

-- vs.

*CARLY M TURNQUIST*

**Defendant(s)**

| INCIDENT LOCATION: | LOCATION OF DEPOSITION: |
|---|---|
| STATE OF NEW YORK  *LOCAL CRIMINAL*  COURT | STATE OF NEW YORK |
| COUNTY OF  *WYOMING* | COUNTY OF  *WYOMING* |
| *TOWN*  of  *WARSAW* | *TOWN*  of  *WARSAW* |

| | Date | Time Started | Full Name: |
|---|---|---|---|
| **On** | 07/20/2021 | at  09:10 AM  I, | *COLLEEN MARVEL* |

**State The Following:**

*On July 19th I escorted Miranda Kranz to her vehicle after she completed testimony in the trial. She expressed concern that Carly Turnquist would try to follow her from the courthouse to her home. I advised Miranda to call me if anything happened while she was driving. At 4:35, I received a call from Miranda on my cell phone. She was very upset and scared. She was crying and kept repeating, "She's behind me, she's behind me". I told Miranda to slow down and let Carly pass. Miranda did that and they described Carly as slowing down as well. I told Miranda to keep driving and we would get someone from law enforcement to her location. At that time, Miranda described passing a church on 20 A heading West. Miranda described Carly's vehicle as a red ford Tauris. While on the phone with Miranda, Breanna Crane from our office called dispatch to get law enforcement to find Miranda and escort her to the county line. I told Miranda to continue driving. Carly was still behind her at this point. While continuing to talk to Miranda I relayed her location to Breanna who told dispatch. We were told a Deputy was called and would be on route to Miranda. After a few minutes of driving Miranda told me that Carly had passed her at a high speed and was driving away. Dispatch was told this, and they told us to have Miranda turn around and return to Warsaw. I relayed that to Miranda, she told me she was turning around in the truck turnaround on 20A and was heading back. Deputy Sampson was on his way and it was decided that Miranda should pull into Glossers farm stand to wait for the Deputy. I stayed on the phone with her until Deputy Sampson arrived. During the call, Miranda was upset and crying. She said she was afraid and wanted me to stay on the phone with her.*

## Notice

(Penal Law §210.45)

In a written instrument, any person who knowingly makes a false statement which such person does not believe to be true has committed a crime under the laws of the state of New York punishable as a Class A Misdemeanor.

Affirmed under penalty of perjury

this  20 TH  day of  JULY , 2021

- OR -

* Subscribed and Sworn to before me

this _____ day of _____

*(signature) Colleen Marvel*
(SIGNATURE OF DEPONENT)

_____ (WITNESS)

*Sgt Colin Reagen*
(NAME OF PERSON TAKING DEPOSITION)

| Time Ended | |
|---|---|
| 07/20/2021 | 09:20 AM |

* This form need be sworn to only when specifically required by the court

# A-358

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                Plaintiff,

v.                                                 Case No. 21-CR-15-JLS-JJM

NICHOLAS TURNQUIST,

                Defendant.

---

## ATTORNEY DECLARATION

       I, ROBERT C. SINGER, ESQ., make this Declaration under penalty of perjury pursuant to 28 U.S.C. § 1746:

       1.      I am an attorney at law duly licensed to practice in the State of New York and this Court and I am Owner of Singer Legal PLLC, attorneys for defendant Nicholas Turnquist.

       2.      I submit this declaration in opposition to the government's appeal of Magistrate Judge McCarthy's decision to release Mr. Turnquist on conditions pending trial.  For the reasons set for below, Magistrate Judge McCarthy's decision to release Mr. Turnquist on conditions was sound and should not be disturbed.

### Procedural History

       3.      On November 2, 2020, a criminal complaint was filed in the Western District of New York accusing the defendant of a violation of 18 USC § 2423(a).  The alleged victim mentioned in the allegation is Miranda Kranz, Mr. Turnquist's step-daughter.  On November 6, 2020, Mr. Turnquist was informed of the complaint and the government moved for his detention.  Prior to the filing of the complaint in this matter, Mr. Turnquist was the subject of an indictment in

# A-359

Wyoming County, New York alleging violations of New York Penal Law §§ 130.96 (predatory

Sexual Assault of a Child) and 130.30(1) (Rape – 2nd Degree) for acts involving Ms. Kranz. Bail in

Wyoming County was set in an amount that the family could not afford ($1,000,000.00), so

Mr. Turnquist remained in custody in Wyoming County. As a result, Mr. Turnquist's counsel, then

AFPD Fonda Kubiak, reserved her right to request a detention hearing in the future. The

Magistrate Judge McCarthy ordered Mr. Turnquist returned to state custody and directed the U.S.

Marshal to place a federal detainer against Mr. Turnquist. *See* Dkt. 8.

      4.    On February 3, 2021, a federal grand jury returned an indictment against

Mr. Turnquist for the same offense mentioned in the criminal complaint. *See* Dkt. 9. Prior to

arraignment, I was asked to take over representation of Mr. Turnquist. On February 11, 2021,

Mr. Turnquist was arraigned on the indictment. I was assigned and entered a plea of not guilty on

behalf of Mr. Turnquist. Because bail remained unattainable in the Wyoming County matter, I

requested leave to file a bail motion in the future. The Magistrate Judge McCarthy consented to this

request and ordered Mr. Turnquist returned to Wyoming County.

      5.    In Winter 2021, a grand jury in Genesee County, New York, returned an

indictment against Mr. Turnquist alleging violations of New York Penal Law §§ 130.25 (Rape – 3rd

Degree) and 130.65 (Sexual Abuse – 1st Degree) for acts involving Ms. Kranz. The Court remanded

Mr. Turnquist, but indicated that bail could be revisited if bail could be posted in Wyoming County.

      6.    On July 8, 2021, a grand jury in Erie County, New York returned an

indictment against Mr. Turnquist alleging three counts of a violation of New York Penal Law §

# A-360

130.25 (Rape – 3rd Degree) for acts involving Ms. Kranz. The court remanded Mr. Turnquist, but permitted counsel to make further argument on bail.

### The Wyoming County matter ends in dismissal

7.      In July 2021, the Wyoming County matter proceeded to trial. The People presented two witnesses: Miranda Kranz and Investigator Aaron Anderson. Following Ms. Kranz testimony, the defense made a motion to dismiss the indictment. The Wyoming County Court entertained the motion, heard argument, and entered a trial order of dismissal. As set forth extensively in briefing before Magistrate Judge McCarthy, *see* Dkts. 19-1, 21, and 26, and at oral argument before the Court, the reason for dismissal had to do with the fact that prosecutors could not prove the charges in the indictment (predatory sexual assault of a child under the age of 13 years old) because Ms. Kranz and others alleged that the sexual abuse allegedly perpetrated by Mr. Turnquist against Ms. Kranz occurred in 2011 when she was 12 years old, but the evidence proved that this was impossible based on documents in the possession of prosecutors and other documents recovered by the defense before trial. Following dismissal, the Wyoming County District Attorney chose not to seek a new indictment against Mr. Turnquist.

### All Judges in the three remaining cases grant bail

8.      Following dismissal of the Wyoming County matter, Mr. Turnquist filed a new bail application in Genesee County Court. After reviewing the evidence, in August 2021 the Genesee County Court granted Mr. Turnquist bail and adopted the Genesee County District Attorney's recommendation: $10,000.00 (cash bail); $20,000.00 (bond); or $30,000.00 (secured surety bond). Mr. Turnquist did not post immediately because his bail conditions in the federal matter and Erie County matter remained unresolved.

# A-361

9.      In the federal matter, Mr. Turnquist filed a motion for release on August 21, 2021.  *See* Dkts. 19, 26.  The government opposed release, *see* Dkt. 21, but the U.S. Probation Office recommended release under certain conditions, to include home detention and electronic monitoring.  Oral argument on the motion was held on September 9, 2021 and Magistrate Judge McCarthy denied Mr. Turnquist's motion, without prejudice.  *See* Dkt. 29.  Magistrate McCarthy requested the defense to submit a new bail package, possibly one that included a monetary condition (the defense argued at the first hearing that monetary conditions should not be imposed because Genesee County Court had imposed monetary bail and it was expected that Erie County Court would do the same).  On September 13, 2021, Mr. Turnquist filed a second motion for release which included a $50,000.00 surety condition.[1]  *See* Dkts. 30 and Exhibit I (Sealed), 36.  The government opposed release.  *See* Dkt. 35.  On September 17, 2021, Magistrate Judge McCarthy heard oral argument on the second motion for release and ordered Mr. Turnquist released on conditions because Mr. Turnquist had successfully rebutted the presumption in 18 U.S.C. § 3142(e)(3)(E) and the government failed to prove that Mr. Turnquist was a flight risk and danger to the community.  *See* Dkt. 37.  The government sought a stay of the order and appealed the decision to this Court on September 22, 2021.  *See* Dkt. 40.


10.      On September 22, 2021, Erie County Court heard oral argument on Mr. Turnquist's bail application relevant to the Erie County matter.  After hearing argument, the court denied the prosecution's request for remand and set bail: $100,000.00 (cash); $250,000.00 (bond); and, $250,000.00 (secured surety bond).

---

[1] The Asset Forfeiture Section of the U.S. Attorney's Office has reviewed the surety information offered by Mr. Turnquist to secure his release.  On September 22, 2021, the Asset Forfeiture Section indicated to me that the surety's interest in the property and all paperwork submitted to secure the surety bond was acceptable to the government.

## Argument

11.     But for the government's request for a stay and the instant appeal,

Mr. Turnquist would be out of custody.  This is because Magistrate Judge McCarthy, after hearing

extensive argument and evidence on two separate occasions, concluded that the evidence failed to

prove that Mr. Turnquist is a flight risk or danger to the community, Mr. Turnquist has

fulfilled/agreed to fulfill the conditions set by Magistrate Judge McCarthy, and Mr. Turnquist and

his family are prepared to post bail pursuant to the monetary conditions set by Genesee County

Court and Erie County Court *who also found* that Mr. Turnquist is not a flight risk if he posts bail in

the amount set by the Court.


12.     When evaluating the release of a defendant under 18 USC § 3142, the Bail

Reform Act instructs courts to consider four factors:

> (1) the nature and circumstances of the offense…;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including –
> > (A) the person's character, physical and mental condition,
> > family ties, employment, financial resources, length of
> > residence in the community, community ties, past conduct,
> > history relating to drug or alcohol abuse, criminal history, and
> > record concerning appearance at court proceedings; and
> > (B) whether, at the time of the current offense or arrest, the
> > person was on probation, on parole, or on other release
> > pending trial, sentencing, appeal, or completion of sentence
> > for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the
> community that would be posed by the person's release.

*See* 18 USC 3142(g).  Consistent with the findings of the U.S. Probation Office and Magistrate Judge

McCarthy, on balance, these factors weigh in favor of releasing Mr. Turnquist from pre-trial

confinement.

13.     *Nature & Circumstances of the Offense.*  There is no dispute that the charge in the indictment is serious.  However, at this time, the charge is nothing more than an unproven allegation for which Mr. Turnquist enjoys the presumption of innocence.  And while this allegation may sound heinous on paper, proving the allegation to a jury beyond a reasonable doubt is far from certain at this point.  In briefing below, Mr. Turnquist presented multiple pieces of evidence that undermine the credibility of the alleged victim, Ms. Kranz, the alleged victim's mother, Amanda Turnquist, and several other government witnesses.  The defense is not going to belabor all of these points and pieces of evidence in this appeal response.  A review of them demonstrates that a conviction at trial is far from certain.  And this factor is but one of four factors considered by the Court.

14.     *Weight of the Evidence.*  Again, the parties engaged in extensive briefing regarding this factor before Judge McCarthy.  The government relies on the fact the Ms. Kranz keeps repeating the allegations, that other people keep repeating the allegations, that a five-year old allegedly witnessed behavior a decade ago that appeared to be sexual in nature, that Mr. Turnquist and his wife discussed the age of consent when trying to brainstorm legal defenses in a jailhouse call, and that Mr. Turnquist allegedly admitted to the conduct at issue during a controlled call with the alleged victim.  Mr. Turnquist pointed out how there are no witnesses to the alleged misconduct, there is no forensic evidence to corroborate the alleged sexual activity, Mr. Turnquist denied the allegations in a multi-hour police interrogation, one trial has ended in a dismissal before the government closed its proof, the government's excerpts of the jailhouse and controlled call take out of context Mr. Turnquist's responses, and the principal witnesses in this case not only harbor motives to lie, but also have lied to the police, the grand jury, and to courts in the past.

# A-364

15.    As I conceded to Magistrate Judge McCarthy at oral argument on September 17, 2021, it is clear that, at this stage, the defense is not going to convince the government that its case is weak and the government is not going to convince the defense that its case is weak. In the end, that is what a trial is for. The important point Mr. Turnquist made is that this is not a case where the defendant was caught having sex with a minor on video and thereafter made an air-tight confession (making a conviction readily achievable). Thus, the "weight" of the evidence is not as heavily tilted in the government's favor as it proffers. And the Bail Reform Act does not require the Court to resolve this contest to grant pretrial release because this factor is but one of several in the analysis. Mr. Turnquist may not prevail on this factor completely, but neither does the government.

16.    *History & Characteristics of Mr. Turnquist.*  In its appeal, the government contends that "[t]he only 'evidence' the defendant brought forward to rebut the presumption of dangerousness and flight after Magistrate Judge McCarthy denied the original release motion is defendant's mother's ability to post a $50,000 bond secured by her house." *See* Dkt. 40-1 at 11. This statement is belied by the papers. In both his written motions, at oral argument, and in the bail report prepared by the U.S. Probation Office, Mr. Turnquist both presented and noted evidence verified by the Probation Office regarding his history and characteristics and those traits prove how he is neither a flight risk nor danger to the community. Mr. Turnquist does not have a criminal record. Prior to his arrest, he served this community as a corrections officer and volunteer fireman. He has strong ties to the area. He is married. He has children. He used to own property until this case caused him to have to sell his marital residence. He has family in the area. Mr. Turnquist does not have a history of abuse of drugs and alcohol. All of this *evidence* demonstrates why Mr. Turnquist is not a flight risk or danger to the community.

# A-365

17.     In its appeal, the government argues that Mr. Turnquist's "repeated" rape and sexual abuse of Ms. Kranz and her testimony that he threatened and physically assaulted Ms. Kranz and others is evidence of his negative history and characteristics. *See id.* at 10-11.  Again, the allegations involving Ms. Kranz are *unproven* at this time.  The testimony she gave in Wyoming County also is not corroborated by medical documents, pictures, etc.  There also is a strong motive to fabricate these unproven allegations possessed by Ms. Kranz and the other witnesses referenced in the government's appeal.  So, the government's arguments are not as persuasive as it implies.

18.     What matters under the Bail Reform Act is whether Mr. Turnquist's history and characteristics show that he is a person who will run or commit additional offenses.  His history and characteristics do not indicate that.  He has no record, substance abuse problem, or many of the other classic concerns relied up by federal magistrates and judges to deny pretrial release.  That is why Mr. Turnquist prevails on this factor.

19.     *Nature & Seriousness of the Danger to any Person/Community Posed by Release.*  The government in its appeal makes several arguments regarding dangerousness.  All of these arguments do not create a bar to pretrial release.

20.     The government argues that pretrial release endangers Ms. Kranz and other witnesses.  If the allegations are to be believed to any degree, then Mr. Turnquist logically *could* pose a "danger" to Miranda Kranz and Amanda Turnquist, however Magistrate Judge McCarthy imposed a no-contact order and other reasonable restrictions to protect the alleged victim and her mother. This condition resolved that concern and Mr. Turnquist has no history of violating court orders.  As a former officer, he understands the risks of failing to abide by such orders.

# A-366

21.     Moreover, to the extent the government attempts to imply that

Mr. Turnquist is going to intimidate Ms. Kranz because his wife, Carly Turnquist, allegedly did so,

the Court should reject this argument.  First, there is *no evidence* that Mr. Turnquist directed his wife

to do this – he was in custody at the time it happened and found out about it after-the-fact.  Second,

it is wholeheartedly improper for this Court to deny bail to Mr. Turnquist because his wife did

something to a witness.  Third, the allegation against Carly Turnquist is not as solid as the

government portrays.  Exhibit K to this response contains body camera footage taken of Ms. Kranz

by the officer responding to this alleged incident minutes after it happened.  In the video, Ms. Kranz

is not scared or intimidated; instead, she is calm and jokes with the officer.  She describes how she

was driving down the road within normal speed when Carly Turnquist overtakes her and looks at

her (but says and does nothing threatening), then slows down to more normal speed (rather than

"cutting" in front of her car as the government avers), and after twice "brake-checking," when

Ms. Kranz pulls off the road, Carly Turnquist continues driving away.  Furthermore, Carly Turnquist



The stretch of Route 20A where this is alleged to have occurred.
The encounter occurred between the Church and Cemetery (approximately 2000 feet)

not only pleaded *not guilty*, but she described the incident much differently to her husband on a jail

call later that day.  Carly told Mr. Turnquist that Ms. Kranz was "brake-checking" her first, so she

overtook Ms. Kranz and kept driving away.  *See* Exhibit J.  Similar to many of Ms. Kranz's

allegations, there is no corroborating evidence (and the same motive to fabricate).  The Court should

# A-367

reject this as a reason to deny release to Mr. Turnquist. Carly Turnquist's alleged actions are irrelevant.

        22.     The government argues concern over dangerousness on the basis that Mr. Turnquist "can still have access to minor children" because Magistrate Judge McCarthy permitted *supervised* visitation with non-witness children. *See* Dkt. 40-1 at 11. The government's belief in the validity of Ms. Kranz's allegations aside, Mr. Turnquist does not pose a danger to anyone or the community at large. This case does not involve a "stranger victim" in the community – the allegations are relegated to a family member only – so the Court should not be concerned that Mr. Turnquist will commit these offenses against other people in the community. Furthermore, there is no evidence that Mr. Turnquist has done this to anyone else in his family (those possible victims were interviewed and denied such abuse). And while it is true that Mr. Turnquist and Carly Turnquist engaged in a consensual sexual relationship with his step-daughter Ms. Kranz when she was 17-18 years old[2] – something that is legal in New York State – this does not indicate that he will violate the law.

---

[2] It is important to note that Ms. Kranz *lied under oath* about this relationship. In the Wyoming County matter, she claimed she was raped at this time. When confronted with text messages sent by herself to Mr. Turnquist which proved that the conduct was consensual, rather than tell the truth, she feigned a lack of recollection and then denied she even sent the messages. As Mr. Turnquist set forth in his reply, this testimony was patently false and the text messages (Dkt. 26-1 – Exhibit G) prove that her testimony was false.

        The defense conceded below, just like Mr. Turnquist did to the police, that this relationship, however legal, was not morally appropriate. It is something Mr. Turnquist regrets. Such regrets form the basis of the "admissions" in the controlled call the government so heavily relies upon as strong proof of guilty, yet it is an admission to the consensual relationship, not the illegal relationship, that Mr. Turnquist is talking about. He denies the illegal relationship multiple times in this call. Mr. Turnquist was willing to admit to his behavior, even if Ms. Kranz cannot under oath.

# A-368

23.    The government also argues that Mr. Turnquist should be denied bail because there is nothing that can minimize Mr. Turnquist's incentive to flee or commit crime because of the lengthy prison sentence he faces, *if* convicted.  *See id.* at 12.  Taken to its logical end, the government's argument stands for the proposition that no defendant should be released pending trial if they face a mandatory minimum sentence unless bail can remove all risk of flight and danger.[3]  Yet, it is important to note that pretrial release under the Bail Reform Act does not require conditions, financial or otherwise, that *guarantee* appearance or *remove all risk*.  As Magistrate Judge Scott aptly put:

> Despite its willingness to allow defendant a chance at release, the Court acknowledges that "the enforcement of all constitutional restraints upon government in its efforts to administer the criminal law entails risks." *United States v. Gonzales Claudio*, 806 F.2d 334, 343 (2d Cir. 1986), *superseded in part on other grounds by* Fed. R. Crim P. 5(c).  **"That, of course, is true of every defendant released on conditions; it is also not the standard authorized by law for determining whether pretrial detention is appropriate.  Section 3142 speaks of conditions that will 'reasonably' assure appearance, not guarantee it."** *United States v. Xulam*, 84 F.3d 441, 444, 318 U.S. App. D.C. 1 (D.C. Cir. 1996) (citation omitted).

---

[3] The government references two cases in its brief – *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991) and *United States v. Ferranti*, 66 F.3d 540, 543 (2d Cir. 1995) – to support its argument that bail should be denied in this case because of dangerousness.  The facts in these cases are markedly dissimilar to the facts in this case.  In *Rodriguez*, the defendant was accused of being a *hitman*, who admitted to another murder and shooting, and who accepted a murder-for-hire proposition.  *See Rodriguez*, 950 F.2d at 87.  The government proved this at the detention hearing using recorded conversations between the defendant and a DEA undercover agent as well as another reliable CI.  *See id.*  The court found "clear and convincing" dangerousness on such evidence.  In *Ferranti*, the defendant was accused of *murder and arson*.  *See Ferranti*, 66 F.3d 540, 541.  At the detention hearing, the government offered five-hours of testimony and other evidence to demonstrate that Ferranti committed a fatal arson and was involved in assault, attempted murder, murder, and witness intimidation.  *See id.* at 541-44.  The court found "clear and convincing" dangerousness on such evidence.  Here, the charges at play and the evidence presented by the government to prove dangerousness is not the same as in *Rodriguez* or *Ferranti*.  It is not even close.

# A-369

*United States v. Albannaa*, No. 12-CR-174S, 2013 U.S. Dist. LEXIS 135618, at *9 (W.D.N.Y. Sep. 23, 2013) (Scott, J.) (emphasis added). Furthermore, under the Bail Reform Act, a judicial officer is *not permitted* to impose any financial conditions of release which result in the pretrial detention of a defendant. *See* 18 U.S.C. § 3142(c)(2). Instead, a Court is required to impose *the least restrictive conditions* possible that will reasonably assure the defendant's appearance and the safety of the public. *See* 18 U.S.C. § 3142(c)(1)(B). To the extent the government advocates for more than that, its argument should be rejected.

24. Lastly, the continued detention of Mr. Turnquist is an impediment to our effective preparation for trial. At this time, Genesee County Jail, like many facilities in the Western District of New York, is experiencing another surge in COVID-19 infections. Genesee County Jail has responded to this concern by locking down the jail to all outside visitors and suspending attorney visitation. There is no end in sight to this order. As such, Mr. Turnquist and I are forced to prepare for everything in this case remotely, by telephone and mail only. This case contains gigabytes of material and I have not even received the govrnment's pretrial disclosures yet. It will be impossible for Mr. Turnquist and I to prepare for trial under such restrictions. If Mr. Turnquist is home, then he can help me prepare for this case because he will have access to the evidence, to a computer to view it on, and have regular access to me and my office. Since Mr. Turnquist does not present a danger or flight risk that Court-imposed conditions cannot resolve, fundamental fairness and the Constitution demand that he be afforded the opportunity to prepare for this trial outside of a jail cell, rather than inside one by telephone and mail only. This represents another reason for release.

# A-370

## Conclusion

25.     For the reasons set forth above and in previous filings, the Court should adopt the recommendation of the Probation Office and Magistrate Judge McCarthy and release Mr. Turnquist from custody forthwith.

Dated:  September 24, 2021
        Williamsville, New York

**SINGER LEGAL PLLC**
*Attorneys for Defendant Nicholas Turnquist*

By:____s/ Robert C. Singer, Esq._____
        Robert C. Singer, Esq.
80 East Spring Street
Williamsville, New York  14221
(716) 222-3288
rob@singerlegalpllc.com

**A-371**

# Exhibit J

**(Hard Copy of Audio Recording)**

# Exhibit K

**(Hard Copy of Video Recording)**

# A-373

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――

UNITED STATES OF AMERICA,

        v.                            21-CR-15-JLS-JJM

NICHOLAS TURNQUIST,

               Defendant.

―――――――――――――――――――――――――――

### GOVERNMENT'S REPLY MEMORANDUM IN SUPPORT
### OF ITS MOTION TO REVOKE THE MAGISTRATE JUDGE'S
### ORDER RELEASING THE DEFENDANT

The United States of America by and through its attorneys, James P. Kennedy, Jr.,
United States Attorney for the Western District of New York, and Paul E. Bonanno, Assistant
United States Attorney, hereby files this memorandum in further support of its Motion for
Review of Magistrate Judge's Determination on Detention (the "Motion") (Dkt. 40) and in
reply to the defendant's memorandum filed in opposition (the "Opposition") (Dkt. 43) to the
government's Motion.


**I.      Defendant Fails To Overcome The Presumption Of Dangerousness.**

Almost all of the arguments the defendant makes in his Opposition were raised before
Judge McCarthy and were found by Judge McCarthy to be insufficient to overcome the
presumption for detention that exists in this case.  As the government noted in its
memorandum (the "Memorandum") (Dkt. 40-1) filed in support of its Motion, the Indictment
here charges the defendant with an offense involving a minor victim in violation of Title 18,

# A-374

United States Code, Section 2423(a). Consequently, there is a presumption that no condition or combination of conditions will reasonably assure the defendant's future appearance in Court and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(E). The defendant bears the burden of producing evidence to rebut the presumption set forth in Section 3142(e)(3)(E). *See United States v. Thompson*, 436 F. Supp.3d 631, 635 (W.D.N.Y. 2020) ("The presumption shifts to a defendant 'a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight.'" (*citing United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)).

At the first detention hearing before Judge McCarthy, held on September 9, 2021, the defendant argued at length the same points he makes now in his Opposition relating to the dismissal of the case in Wyoming County, the victim's trial testimony there, the defendant's lack of a criminal history, the defendant's ties to the area, etc. *See* Motion, Ex. A, at 3-8, 12-16. Judge McCarthy rejected these arguments and found, at the conclusion of the hearing, that the defendant had not rebutted the presumption that the defendant poses a danger to the community and a risk of flight. *Id.* at 18.

At the second detention hearing before Judge McCarthy, held on September 17, 2021, the only new "evidence" the defendant brought forward to rebut the presumption was defendant's mother's ability to post a $50,000 bond secured by her house. Judge McCarthy found that the proposed bail package proposed by the defendant "would reasonably assure"

# A-375

the Court that the defendant would not pose a risk of flight or danger to the community.  *See* Motion, Ex. B at 14.

It is the government's contention that the $50,000 bond is insufficient to overcome the presumption set forth in Section 3142(e)(3), particularly the presumption that the defendant presents a danger to the community.  The fact that defendant's mother is willing to post a $50,000 bond is not evidence "'contrary to the presumed fact' of his dangerousness."  *United States v. Hicks*, 15-CR-33-A, 2018 WL 11579881, at *7 (W.D.N.Y. May 5, 2017) (quoting *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991)).  The Second Circuit's opinion in *Rodriguez* is instructive.  In *Rodriguez*, the defendant was charged with conspiring to distribute and possess with intent to distribute more than 500 grams of cocaine, thus triggering the presumption for detention.  *Rodriguez*, 950 F.2d at 87.  The trial court ordered the defendant released, emphasizing his complete lack of a criminal record and following pretrial service's recommendation of release on a $100,000 security bond.  *Id.* at 88-89.  The Second Circuit reversed the release order and ordered defendant detained.  The Court found that the defendant had not overcome the presumption of dangerousness, despite his lack of a criminal record and despite the $100,000 security bond:  "We conclude that the district court erred in determining that the bail package offered by Rodriguez reasonably would assure the safety of the community. The existence of four cosigners and $10,000 cash may assure the appearance of Rodriguez at trial but will not secure the safety of the community. Therefore, we vacate the order of the district court and remand with instructions to detain Rodriguez."  *Id.* at 89.  In his Opposition, the defendant attempts to distinguish *Rodriguez* by emphasizing that the

# A-376

government claimed the defendant in that case was a hitman. But here, it is alleged the defendant raped his stepdaughter while she was in his care. Surely both crimes are heinous. Also, in *Rodriguez*, the defendant was not charged with being a hitman, but only conspiring to distribute cocaine. Here, in contrast, the defendant is charged with the very conduct that demonstrates his dangerousness.

## II.      Defendant's Release Poses A Risk To Children.

The presumption of dangerousness is particularly well founded in this case. The defendant is charged with sexually abusing his stepdaughter and, if released, he would have access to other minor daughters. The defendant has four underage daughters (two biological daughters and two stepdaughters). Judge McCarthy's release order allows the defendant to have contact with three of the four daughters (not the daughter who is a witness against him). Judge McCarthy ordered that the defendant's contact with minors be supervised by another responsible adult, but that condition is insufficient because the defendant's wife cannot be trusted to supervise the defendant's interactions with minors. First, according to Victim 1's trial testimony in Wyoming County, Carly Turnquist joined in the sexual abuse of Victim 1. *See* Motion, Exhibit C, trial transcript, direct examination of Victim 1, at 42-43; Dkt. 1 ¶ 7. Second, Carly Turnquist has been charged with felony witness tampering in Wyoming County Court, as noted in the Motion. Third, two weeks ago, on September 15, 2021, Carly Turnquist was charged with another crime, this time in the Town of Lancaster, where she was charged by felony complaint with Aggravated DWI with a Child-Passenger Less than 16 (Leandra's Law) in violation of the New York Vehicle and Traffic Law Section 1192-2. A

# A-377

copy of the felony complaint is attached hereto as **Exhibit A**.  As set forth in the felony complaint, Carly Turnquist was driving a motor vehicle while under the influence of stimulants and sedatives and struck another vehicle at around 7:34 p.m. on Transit Road near Como Park Blvd. in Lancaster.  Her 9 year-old daughter was in the backseat of the vehicle at the time.

In light of Carly Turnquist's own conduct as described above, she cannot be relied upon to supervise the defendant's interaction with his daughters.  Consequently, the release of the defendant would pose a serious risk of danger to the community, including his own children.  The presumption for detention imposed by Congress is warranted here and the defendant should remain in custody.

## CONCLUSION

The government respectfully requests that the District Court revoke Magistrate Judge McCarthy's release order and order that the defendant be detained pending trial.

DATED:  Buffalo, New York, September 28, 2021.

JAMES P. KENNEDY, JR.
United States Attorney

BY:    s/ PAUL E. BONANNO
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York  14202
716-843-5873
Paul.Bonanno@usdoj.gov

A-378

EXHIBIT A

# A-379

Docket Number_____

CD #: **21-114123**

**TOWN OF LANCASTER**
**COUNTY OF ERIE STATE OF NEW YORK**

The People of the State of New York

vs.

**CARLY M. TURNQUIST  DOB: 09/20/1986**

65 VILLA AV

BUFFALO, NY  14216

)
)
)
)
)
)

**FELONY**

INFORMATION / COMPLAINT

I, **Police Officer GARRETT D. SZPYLMAN**, a police officer herein, accuse **CARLY M. TURNQUIST**, the DEFENDANT of this action, and charge that on or about Wednesday, September 15, 2021 at 5111  TRANSIT RD in the TOWN OF LANCASTER TOWN, County of ERIE, at about 07:34 PM, said DEFENDANT did commit the offense of:

### AGGRAVATED DWI:WITH A CHILD-PASSNGER LESS THN 16-1ST OFFENSE

a class E  FELONY contrary to the provisions of section **1192**, subsection **2-AB** of the Motor Vehicle and Traffic Law of the State of New York.

NO PERSON SHALL OPERATE A MOTOR VEHICLE IN VIOLATION OF 1192-2, 3, 4 OR 4-A OF THIS SECTION WHILE A CHILD WHO IS FIFTEEN YEARS OF AGE OR LESS IS A PASSENGER IN SUCH MOTOR VEHICLE.

TO WIT: THE OFFENDER DID OPERATE NY# KEB2697 ON TRANSIT RD. WHILE UNDER THE INFLUENCE OF AND INTOXICATED BY STIMULANTS AND SEDATIVES. THE OFFENDER DID STRIKE ANOTHER VEHICLE AT THE TIME OF IMPAIRMENT ON TRANSIT RD. AT COMO PARK BLVD. THE OFFENDER DID HAVE HER NINE-YEAR-OLD DAUGHTER IN THE BACK SEAT AT THE TIME OF THE ACCIDENT AND IMPAIRMENT. THE CHILD IS ALEIGHIA SINGER, BORN 05/26/2012.

ALL CONTRARY TO THE PROVISIONS OF THE STATUTE IN SUCH CASES MADE AND PROVIDED. THE ABOVE ALLEGATIONS OF FACT ARE MADE BY THE COMPLAINANT HEREIN ON DIRECT KNOWLEDGE.

Therefore, the complainant requests that said defendant be dealt with according to the provisions of the Criminal Procedure Law, and according to law.

### NOTICE
**(Penal Law, Section 210.45)**
**It is a crime, punishable as a Class A Misdemeanor under the Laws of the State of New York, for a person, in a written instrument, to knowingly make a false statement, or to make a statement which such person does not believe to be true.**

_____

Complainant

Subscribed and sworn to me this

16th of September, 2021

# A-380

_____

# A-381

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | Docket Number: |
| | | 1-21-CR-00015-JLS-JJM |
| | * | |
| | * | Buffalo, New York |
| v. | * | September 30, 2021 |
| | * | 10:04 a.m. |
| | * | |
| NICHOLAS TURNQUIST, | * | ORAL ARGUMENT |
| | * | |
| Defendant (1). | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:          JAMES P. KENNEDY, JR.,
                            UNITED STATES ATTORNEY,
                            By PAUL E. BONANNO, ESQ.,
                            Assistant United States Attorney,
                            Federal Centre,
                            138 Delaware Avenue,
                            Buffalo, New York  14202,
                            Appearing for the United States.


For the Defendant:          SINGER LEGAL, PLLC.,
                            By ROBERT C. SINGER, ESQ.,
                            80 East Spring Street,
                            Williamsville, New York  14221.


The Courtroom Deputy:       KIRSTIE L. HENRY


Court Reporter:             BONNIE S. WEBER,
                            Notary Public,
                            Robert H. Jackson Courthouse,
                            2 Niagara Square,
                            Buffalo, New York  14202,
                            Bonnie_Weber@nywd.uscourts.gov.

# A-382

1

        Proceedings recorded by mechanical stenography,
2                transcript produced by computer.

3

4            (Proceedings commenced at 10:04 a.m.)

5

6            **THE CLERK:**  All rise.

7            The United States District Court for the Western

8    District of New York is now in session.  The Honorable John

9    Sinatra presiding.

10           United States v. Nicholas Turnquist, case number

11   21-CR-15.  This is the date set for oral argument.

12           Counsel, please state your appearances for the record.

13           **MR. BONANNO:**  Good morning, Your Honor.  Paul Bonanno,

14   for the Government.

15           **MR. SINGER:**  Good morning, Judge.  Robert Singer, on

16   behalf of Mr. Turnquist, who is present.

17           **THE COURT:**  Good morning, Counsel.  Good morning,

18   Mr. Turnquist, as well.

19           **THE DEFENDANT:**  Good morning, Your Honor.

20           **THE COURT:**  We're here today on the Government's

21   motion to revoke the magistrate judge's order of release and my

22   review is de novo.

23           Mr. Bonanno, have victims been given notice of today's

24   proceeding?

25           **MR. BONANNO:**  Yes.  They have, Your Honor.

**A-383**

1          **THE COURT:**  Okay.  I have studied the submissions,

2    transcripts of proceedings before Judge McCarthy and the

3    complaint, as well, and I'd like to start with a few questions

4    here.

5          Mr. Bonanno, why aren't the proposed conditions enough

6    to reasonably assure the safety of the community?

7          **MR. BONANNO:**  Your Honor, our concern here is the

8    danger this defendant poses to the community, particularly

9    children, given the charge here and given his conduct, as

10   alleged both in our indictments, as well as the indictments

11   pending in Erie County and Genesee County against the defendant.

12         The defendant here is charged with sexually abusing

13   his stepdaughter when she was a minor in his care.

14   Specifically, the allegation in our indictment is that he

15   traveled with his stepdaughter, who was 16 at the time, to

16   Pennsylvania to engage in illegal sexual activity with her

17   there, and that he brought her and two younger daughters on that

18   trip.

19         The concern here, specifically with respect to the

20   conditions that were set by Judge McCarthy, is that he allows in

21   those conditions the defendant to have contact with children,

22   with underage minors.

23         Now, the condition is that, that contact be

24   supervised, but it's the Government's position that the

25   supervision is not sufficient.

# A-384

1          For example, the defendant's wife, Carly Turnquist,

2     was engaged with the defendant in the sexual abuse of the minor

3     victim in this case.

4          When she moved in with the defendant and the victim,

5     and at that point in time, was the defendant's girlfriend, she

6     engaged in sexual activity with the defendant and the victim.

7          That, in and of itself, I think, should indicate that

8     she certainly cannot be trusted to supervise the defendant's

9     contact with children.

10          There are three children.  Specifically, three

11     daughters that the defendant has with whom he can have contact.

12     One of the daughters, who is a biological daughter of the

13     defendant and is a witness against him in the Government's case,

14     Judge McCarthy said he cannot have contact with.

15          And we appreciate that, but he is allowed to have

16     supervised contact with the other three daughters.  Now, Carly

17     Turnquist not only assisted with the sexual abuse of the victim

18     in this case, but she has two pending felony charges against her

19     right now.

20          One in Wyoming County for witness intimidation for an

21     incident that occurred the day the victim testified in Wyoming

22     County.

23          But then also two weeks ago, she picked up another

24     felony charge in Lancaster.  It is a Leandra's Law violation.

25     It was a Wednesday night, September 15th.  She was driving

**A-385**

1    around 7:30 p.m. in the area of Transit Road and Como Park

2    Boulevard in Lancaster.

3           And she got into a motor vehicle accident.  She had

4    her two daughters, I believe eight and nine years old, in the

5    backseat of the car.

6           The responding Lancaster police officer determined

7    that she was heavily intoxicated, had hit another car, and

8    failed all the field sobriety tests.

9           And this occurred with the daughters in the back seat.

10   And, in fact, she started to pass out in the back of the patrol

11   car.

12          So we're very concerned that if the defendant is

13   released and allowed to have contact with his daughters and

14   other children, he cannot be trusted with them, given his

15   conduct, as alleged here, and given the inability, we think,

16   certainly, of Carly Turnquist to provide any kind of adequate

17   supervision.

18          But even beyond that, just given his history, given

19   the fact that he is charged with sexually abusing his own

20   stepdaughter in his care repeatedly over years, as reflected by

21   our indictment and the other two indictments, we have grave

22   concerns about the danger he poses to the safety of the

23   community.

24          **THE COURT:**  Who has custody of the daughters now?

25          **MR. SINGER:**  Just for the purpose of clarification,

**A-386**

1    Judge, there aren't daughters.  It's a daughter and son.  I just

2    want to make sure we have our facts straight.

3              **THE COURT:**  Okay.  Who has custody of the daughter and

4    son right now?  There are two minors?

5              **MR. SINGER:**  They're two minors.

6              **THE COURT:**  Today?

7              **MR. SINGER:**  Carly Turnquist's biological children,

8    not his children, and she has custody of those children.

9              **THE COURT:**  And the defendant's son and daughter

10   are -- there are two minors that fit that category, right?

11             **MR. SINGER:**  They are minors that are not in his

12   custody.  They're in the mother's custody.

13             **THE COURT:**  That's the question.  So the mother has

14   custody of the defendant's daughter and son, who are minors?

15             **MR. SINGER:**  Just for clarification, Judge, so there

16   is -- there is a daughter and son that Carly Turnquist --

17             **THE COURT:**  Yeah.

18             **MR. SINGER:**  -- is the biological mother of --

19             **THE COURT:**  Right.

20             **MR. SINGER:**  -- that he doesn't have a relationship

21   with --

22             **THE COURT:**  Right.

23             **MR. SINGER:**  -- other than just being together with --

24             **THE COURT:**  Right.  I'm not asking -- I'm not asking

25   about them.  I'm asking about the defendant's children.

**A-387**

1          **MR. SINGER:**  So with regard to his biological

2   daughters, they are in the custody of Amanda, who is his

3   ex-wife.

4          **THE COURT:**  Okay.

5          **MR. SINGER:**  Who is the mother, biologically.

6          **THE COURT:**  Were they in his custody before he was

7   arrested?

8          **MR. SINGER:**  They were, Judge.

9          **THE COURT:**  Right up until the time he was arrested?

10         **MR. SINGER:**  Correct.

11         **THE COURT:**  Mr. Bonanno, what does the Government have

12  to say about risk of flight?

13         **MR. BONANNO:**  Your Honor, we are concerned also about

14  risk of flight and I made this argument to Judge McCarthy

15  because the defendant is facing three different indictments.

16         In this indictment, he faces a mandatory minimum -- if

17  convicted, a mandatory minimum sentence of ten years,

18  potentially up to life.  And so we think that that certainly

19  would give him incentive to flee, and the fact that he's facing

20  indictments in Genesee County and Erie County.

21         So for all those reasons, we are concerned about his

22  risk of flight, but our primary -- or my primary focus this

23  morning, Your Honor, candidly, is dangerousness.

24         **THE COURT:**  Okay.

25         Mr. Singer, what do you say about all of that and how

**A-388**

1    does your client rebut the presumption?  Why is the release

2    appropriate here?  It's really all the same question.

3            **MR. SINGER:**  I understand, Judge.  I guess what I

4    would say is that what the Government has played out here is a

5    lot of things about Carly Turnquist, all right.

6            And I think we made that clear in the motion, that has

7    very limited relevance, if any relevance at all to any of the

8    considerations because Carly Turnquist is not sitting to my

9    left, Nicholas Turnquist is.

10           Carly Turnquist, based on the allegations and based on

11   the charges that, whether it's the Federal Government or the

12   state government has brought, engaged in a consensual sexual,

13   legal activity with the alleged victim in this case, M.K.

14           So to say that she facilitated anything that he did

15   that's charged in this indictment and alleged in the indictment

16   or any of the other indictments out there is not accurate.

17           She is not charged as an accomplice.  She is not

18   charged with engaging in this type of activity and the reason

19   why is because she didn't transport anyone over state lines.

20           She didn't assist in transporting anyone over state

21   lines and she engaged in consensual legal activity under the

22   laws of the State of New York, so I think that's the first thing

23   I would like to bring up to the Court's attention.

24           The second thing that I think is important is they

25   claim that there's this risk of danger with regard to other

**A-389**

1   children that are either his biological children or other

2   children that he's around.

3          Judge, there is no allegations -- no allegations

4   regarding any other child in this case that Mr. Con --

5   Mr. Turnquist has had contact with, biological, step, or

6   otherwise.

7          There is no allegations that he engaged in this type

8   of activity with any stranger victim at all.  And these people

9   were all interviewed by the CAC, by police, to determine whether

10  or not anything was going on.

11         And every single one of those people denied that

12  Mr. Turnquist did anything to them.  And they were given the

13  opportunity in a safe environment to make those allegations

14  clear, and they have never wavered from that since, Judge.

15         So I think it's a reach to say that, well, he's

16  obviously going to sexually assault other children that he has

17  contact with because that is not the case, based on the evidence

18  that was brought forth to me in the Government's own

19  disclosures.

20         The Government also basically states that, well, he

21  has a history.  The history in this case is based on the

22  allegations involved with Ms. K, and Ms. K, alone.

23         I'm not going to belabor the points, as I said in my

24  response, to the Government's appeal in this case.  But you

25  know, needless to say, we have a disagreement over the strength

**A-390**

1    of the allegations in this case.

2          We are never going to convince each other otherwise at

3    this point, but I don't think it's your job either to be

4    convinced otherwise about, you know, what are the validity of

5    these allegations?

6          The basis of the matter is, is that they are contested

7    and there are a lot of different motivations that we put forth.

8    There was a lot of different testimony that was given falsely

9    that was put forth, Judge, which I think raises some questions

10   as to whether or not the strength of the Government's case is

11   really there or not.

12         And if you look back beyond the allegations in this

13   case, Judge, Mr. Turnquist's history is just that of a regular

14   citizen.

15         He holds a job.  He has ties to the community.  He

16   does work.  He's worked in law enforcement, as well as first

17   responder capacities in the past.

18         There is not a single thing to indicate that he would

19   flee, based on the fact that he's never had any type of flight

20   offenses.

21         When the police came over to his house in April of

22   2020, he engaged with them.  He voluntarily went down to the

23   police station.  He sat down for a four-hour interview with them

24   and then he was arrested.  So he never ran away from them.  He

25   never tried to abscond.

**A-391**

1          And on top of that, as we point out in our motion, he

2     doesn't have any history of substance abuse.  He doesn't have

3     any history of any other type of behavior that would indicate

4     that he would be a risk of flight or he would be a danger to the

5     community, other than what the Government's allegations are in

6     this case.

7          And again, they are disputed.  They are just

8     allegations at this point.  None of them have been proven.  We

9     put together a bail package in front of Judge McCarthy.

10         And originally, I told the judge and asked the judge,

11    please don't pose a financial condition in this case because of

12    all the other financial conditions that are going to be imposed

13    by the other jurisdictions.

14         And Judge McCarthy, you know, stated in the first bail

15    hearing we had, you know, Mr. Singer, I'm going to dismiss, you

16    know, this request, but I'm going to allow you to bring it again

17    without prejudice.

18         And I sat down with the family and had some hard

19    conversations with them and we were able to come up with a

20    surety interest and that to -- to Judge McCarthy, along with all

21    the other conditions he put forth.

22         You know, again, the conditions that he put forth in

23    the record that the Government didn't address with you, other

24    than just the supervision aspect involving Ms. Turnquist in that

25    other case, was reporting to pretrial services, surrender your

1   passport, no new travel, restricted to the Western District of

2   New York, avoiding contact with the witnesses.  In particular,

3   no contact with Minor Two.

4         Don't possess a firearm, electronic monitoring, home

5   detention.  Don't engage in any type of obstruction of justice.

6   There's computer conditions regarding searching out child

7   pornography or adult pornography.

8         And he consented to monitoring on that.  Mental health

9   intervention and treatment, if that's something that would be

10   appropriate.

11         And the probation office, on top of that, agreed that

12   all these conditions, prior to Judge McCarthy putting them in,

13   were something that they were comfortable with supervising him.

14         So I guess, you know, what I find here interesting is

15   that the Government's coming before you and asking you to be the

16   only judge -- the only judge out of three jurisdictions that

17   have active cases right now, to remand Mr. Turnquist without

18   bail.

19         The other judges in this case have found suitable

20   conditions that he's going to appear for trial and have found

21   that -- you know, he's not this overwhelming danger.

22         And I just -- you know, again, I -- my concern in this

23   case is that I need Mr. Turnquist to help me and he can't do

24   that from a jail cell right now, where I can't even meet him by

25   anything other than a phone.

**A-393**

1          And I think that there are conditions that were put

2     out -- I think Judge McCarthy put forward a sober analysis of

3     this case and I think he put in conditions that would assure the

4     safety of the community and I believe that we put forth evidence

5     that rebuts that presumption and that's why Judge McCarthy ruled

6     the way he did.  I think you should rule the same, Judge.

7          **THE COURT:**  Mr. Singer, regarding whether I should be

8     the only judge to remand your client, don't I have a unique

9     indictment with unique evidence and unique corroboration here in

10    front of me that's not at issue in the State cases?

11         **MR. SINGER:**  No.  Respectfully, Judge, I don't think

12    you have everything.  The evidence that was presented before

13    Judge McCarthy, as well as before you, is the same evidence that

14    was presented before all the other judges in the case.

15         And the allegations involved in the case, while they

16    don't involve in the State cases, transportation across state

17    lines, do involve the same core crux of allegations that are

18    present in this one.

19         And what we expect to be presented in this case, which

20    is, he engaged in activity with her between the ages of 12 to 18

21    that was nonconsensual in nature, whether it was based on her

22    age or whether it was based on force.

23         So, you know, I think the unique part of this case is

24    that it's charged Federally.  That there is interstate travel,

25    that is required as part of the elements.

**A-394**

1              And also that, you know, there is the element of --

2     you know, engaging in a sexual relationship with someone under

3     the age of 18 is illegal in Federal Court, but is legal in State

4     Court, because the age of consent in New York is 17.

5              So I think that's the unique aspect of this case, but

6     I don't think there is unique aspects to this case.  And the

7     corroboration -- I guess, I look at, what has the Government

8     corroborated.  And I guess, what is in dispute?

9              The corroboration is -- well, there are billing

10    records that show that he traveled on such and such a date down

11    to Erie, Pennsylvania.

12             We don't dispute that, Judge.  We never disputed that,

13    Judge.  What we are disputing is the acts of sexual intercourse

14    with the alleged victim in this case at that water park.

15             And I guess, when I look at, you know, the

16    corroborating evidence on that, we have the fact that, well,

17    Ms. K said this over and over to police and she testified under

18    oath to it in some limited capacity at the Wyoming County trial.

19             You know, that's -- that's what we have on that.  And

20    then they point to the fact that we have a statement from a

21    five-year-old who says that, well, I saw my sister in bed with

22    Mr. Turnquist and he was on top of her.

23             She didn't say, I saw them having sex.  She didn't say

24    that.  And this is coming from a five-year-old in a dark room,

25    in the middle of the night.  A five-year-old, I might add, who

# A-395

1   has developmental issues and delays.

2           So I don't think that's necessarily, you know, a

3   strong corroborating fact.  And it doesn't involve necessarily

4   this incident that's alleged in the indictment either.

5           And the other thing is, is that they point to what is

6   a controlled call.  And again, we've been through the briefing

7   on that multiple different times, Judge.

8           There is a difference the Government has regarding

9   what their theory is and there is a difference between what we

10  have.  Mr. Turnquist states in that Turnquist (sic), I regret

11  that it happened.

12          Not that I regret that I -- I sexually assaulted you

13  when you were 12 or I sexually assaulted you in Erie,

14  Pennsylvania, when you were 16.

15          And, again, I go back to look at those text messages

16  that you reviewed.  What does it talk about?  It talks about a

17  sexual consensual relationship between Ms. K. and Mr. Turnquist

18  that occurred when she was 17 years old, going into 18 years

19  old, inside the State of New York, not outside of it.

20          And you know, that she denied in the Wyoming County

21  trial.  She said, no, you know, I never sent those messages.

22  No, this is all rape.

23          Again, you know, that goes to the core of the

24  allegations, to the corroborations provided.  I disagree that

25  it's as strong as the Government's proffer in this case.

# A-396

1        **THE COURT:**  While you're talking about the

2    corroboration topics, what do you want to say about the -- if

3    anything, about the phone call between your client and his wife

4    while he was in jail -- the jailhouse phone call?

5        **MR. SINGER:**  What I would say to that, Judge, is that

6    that was well before my appointment in this case.

7            In speaking, you know, with the family and in speaking

8    with the client, they've had dissatisfaction with some of the

9    lawyers that had been involved in this case previous to me.

10           That conversation occurred earlier on in the case and

11   Mr. Turnquist and his wife are not attorneys.  They are not

12   educated in the law and when I listen to that conversation, you

13   know, I kind of chuckled in some ways because I hear that kind

14   of conversation either in my office or I hear it on recorded

15   phone calls all the time.

16           And it's two people trying to figure out, hey, what's

17   the legal defense in this case -- who may not necessarily know

18   what they're talking about.

19           And they are trying to grasp at straws because they

20   are desperate, number one, to defeat the allegations that have

21   been leveled against them because they don't believe they are

22   true.

23           And number two, they're trying to put their heads

24   together to try to get back together because at that point, they

25   were separated, and separated for several months.  And there was

**A-397**

1    no end in sight and their lawyers were not doing anything to

2    change the analysis.

3          **THE COURT:**  Don't all of these little pieces of

4    corroboration, the five-year-old daughter, the two phone calls,

5    the records, don't they all mean something for the weight of the

6    evidence, which is a factor here?

7          **MR. SINGER:**  They may mean something for the weight of

8    the evidence factor, Judge.  Of course, that's something that

9    you have to weigh.  But as we also stated in our papers, that's

10   but one factor.

11         And when it comes down to bail, you know, there is no

12   requirement that I disprove the allegations that the Government

13   is levying against my client to secure an opportunity for

14   pretrial release.

15         There is no obligation that they prove those because

16   that's one factor in the analysis.  And the other factors, when

17   you take a look at them again -- you know, what are the

18   reasonable, least-restrictive conditions that can ensure both

19   his appearance at trial and the safety of the community?

20         What are his history and characteristics that suggest

21   whether or not he is going to commit additional offenses or

22   flee?

23         All of those things, when you take a look at them in

24   balance -- you know, if the Government wins on one factor, it

25   doesn't win on all of them.

**A-398**

1      And, again, I go back to those factors.  Those

2  conditions are put in place by Judge McCarthy.  Those are

3  conditions that will assure those things.  His history and

4  characteristics does not suggest that those won't.

5      And that's the analysis on whether or not he should be

6  released, pending trial, because, again, he's presumed innocent

7  until proven guilty and we haven't reached that point yet.

8      **THE COURT:**  Mr. Bonanno, what about the point that the

9  defendant isn't being accused of conduct outside of Victim One?

10     **MR. BONANNO:**  Your Honor, I don't think that the

11  presumption depends on that.  I don't think that there is a need

12  for there to be other victims for this presumption to arise.

13     So I think that he's presumed dangerous, even with one

14  victim under the law, because given his conduct, as alleged,

15  with that one victim, there is reason to be concerned about how

16  he is going to treat other minors, other daughters, quite

17  frankly.

18     And I think that that presumption is what really

19  distinguishes the position that Your Honor is in from the State

20  Court judges.

21     True, they did not remand the defendant, but they

22  don't have the presumption that applies in this case, and that's

23  a big difference.

24     And I also think that there is more corroboration for

25  the Federal charge than there is in the State charges, because

**A-399**

1   for the Federal charge, we only need to show that he engaged in

2   this conduct with the victim when she was 17.  Under 18.  So 17,

3   16, 15 all apply.

4        And he admitted to East Aurora detectives that he had

5   sex with the victim when she was 17.  So that's an additional

6   level of corroboration that we have that they don't have in

7   State Court because of the age threshold here in Federal Court.

8        And that also the jail call that Your Honor brought up

9   does corroborate the Federal charge because he says, could you

10  please look up the age of consent in Pennsylvania, South

11  Carolina, Florida, these other states, so that -- you know, if

12  the age of consent is, Pennsylvania, 15.  Hey, then it's legal.

13       Well, that clearly suggests that he knows he had

14  sexual conduct with the victim when she was 15, 16.  So I think

15  there is a lot more before this Court than there is in the State

16  courts.

17       **THE COURT:**  Does the Government believe that there is

18  a risk of danger to Victim One still?  I know there is some

19  allegations of a threat or some threats that occurred years ago.

20       **MR. BONANNO:**  The -- yes.  The Government is very

21  concerned about the risk of danger to Victim One, given, as she

22  testified under oath in Wyoming County Court, a long history of

23  threats by this defendant against her, if she ever told on him.

24       And repeated instances of physical violence against

25  her, including punches.  Those -- that history, along with the

**A-400**

1   witness intimidation that is alleged to have occurred the very

2   day she testified, causes us to feel very concerned about Victim

3   One's safety.

4          **THE COURT:**  Mr. Singer, the last word.

5          **MR. SINGER:**  Yeah, Judge.  I guess, in regard to this

6   history of potential threats or threats and intimidation

7   regarding M.K., again, as we state in our motion, Mr. Turnquist

8   is not charged with witness intimidation.  He never was.

9          And it was because he didn't engage in any acts of

10  witness intimidation.  It wasn't coordinated and whatever Carly

11  Turnquist may or may not have done, is at this point -- again,

12  that's an unproven allegation.

13         And we put forward evidence to you to show that, you

14  know, there is some issues with some of the allegations.  It

15  doesn't involve him.  And so, you know, that's the important

16  part of your analysis.

17         I think the other part regarding this long history of

18  threats or abuse.  Again, you know, I do a lot of cases

19  involving Family Court sometimes and, you know, the one thing

20  that I have learned in all those cases, and your judicial

21  experience probably teaches you, as well, is that kids get

22  older, they can vote with their feet.

23         And if they feel like they are in a bad situation when

24  they start to get 16 or 17 or even 18 years old, they can leave,

25  and they do leave.

1          And I think what's very interesting in this case is

2     that Ms. K. remained with Mr. Turnquist when she had the choice

3     to go to her mother, because she didn't feel that she would be

4     in a better situation with her mother.  She felt she was in a

5     better situation with Mr. Turnquist.

6          And, you know, if these allegations are as true as the

7     Government plays out to you today, why would someone do that?

8     You know, I can -- I think the Court can probably understand why

9     a 12-year-old would do that.

10          But when someone is 18, when someone has a boyfriend

11     and then a fiancé and they have the ability to move away from

12     someone who has repeatedly abused them for all these years, that

13     the Government alleges, and they don't -- I mean, that raises a

14     lot of eyebrows to me.  A lot of questions.

15          And, you know, I think it's instructive as to why

16     these threats that have been stated by Ms. K., their validity is

17     a little suspect.

18          I think the other part, you know, that I would

19     recognize, too, Judge, is the concern of the Government in this

20     case is -- well, we're concerned that he might have access to

21     children.  He could live with his father, who doesn't have any

22     children.

23          He could live potentially with his mother, who doesn't

24     have any children, because that would be a least-restrictive

25     condition that would allow him to be released pretrial and would

Proceedings - 09/30/21                                          22

**A-402**

1  potentially, you know, afford some assurance to the Government

2  that he wouldn't have access to children to do these things.

3          Because, again, what does the Bail Reform Act require?

4  It requires the least restrictive conditions, not the most

5  restrictive conditions.

6          As I stated in my brief, the goal here is not to

7  remove any and all risk or to absolutely guarantee appearance.

8  It's to put conditions in effect that reasonably assure that.

9  And I think that's your job today and I think that the

10  conditions put into effect by Judge McCarthy do that.

11          **THE COURT:**  I'm not going to consider any of the

12  allegations related to your client's current wife, Carly

13  Turnquist.

14          Nevertheless, I'm going to grant the Government's

15  motion to revoke Judge McCarthy's release order.

16          Under Title 18, United States Code 3142(e), I must

17  independently determine if a condition or combination of

18  conditions will reasonably assure Mr. Turnquist's appearance, as

19  required, and the safety of the community.

20          If I find that no such condition or combination of

21  conditions exists, I must order Mr. Turnquist detained, pending

22  trial.

23          I've given these arguments here today, including the

24  written submissions, a lot of consideration and I do not think

25  that release is warranted under these facts.

**A-403**

1          A Grand Jury indicted Mr. Turnquist on one count of

2    transporting a minor with intent to engage in criminal sexual

3    activity.

4          He's charged with an offense involving a minor victim

5    under Section 2423(a) and the rebuttable presumption in

6    18 United States Code 3142(e)(3)(E) applies.

7          I further find that Mr. Turnquist has not introduced

8    sufficient evidence to rebut that presumption, that no condition

9    or a combination of condition will reasonably assure the safety

10   of the community, if he were released pending trial.

11         I've considered all of the factors in 18

12   U.S.C. 3142(g), including all subsections.  Specifically, the

13   nature and circumstances of the offenses or the offense --

14   excuse me -- the weight of the evidence, Mr. Turnquist's history

15   and characteristics, and the danger to the community.

16         The offense is -- obviously, the alleged offense is

17   obviously a serious one, it carries a minimum of ten years of

18   incarceration with a maximum term of incarceration of life and

19   it qualifies as a crime of violence involving a minor.

20         I have relied on the corroboration that I mentioned in

21   my questioning, including from Minor Two and the phone call from

22   the Wyoming County jail and the controlled phone call with

23   Victim One, as well as the corroborating records regarding the

24   Splash Lagoon stay in December of 2014.

25         I have considered, as well, the -- the threats related

**A-404**

1   to Victim One.  Even though they are dated, I have considered

2   them, nonetheless.  And I've considered the risk of harm to

3   other minors, including the potential access to other minors in

4   my decision.

5        My analysis of these factors is based on my

6   consideration of the parties' arguments and written submissions,

7   the Government's proffer, the transcripts of the detention

8   hearings before Judge McCarthy on September 9 and September 17,

9   the pretrial services report, dated September 2, 2021, and the

10  indictment, the criminal complaint signed by Judge McCarthy and

11  the affidavit of Randall Garver, Special Agent of the FBI, in

12  support of the complaints.

13       I find by clear and convincing evidence that

14  Mr. Turnquist's release would pose a danger to the safety of

15  others in the community and that no condition or combination of

16  conditions will assure the safety of others or the community if

17  Mr. Turnquist were released, pending trial.

18       I base that conclusion on all the facts and factors

19  just discussed.  Because I find that the Government established

20  Mr. Turnquist's danger to the community by clear and convincing

21  evidence, I need not decide whether his release poses a risk of

22  flight.

23       The transcript of my oral ruling here today shall

24  constitute my written findings and decision on the motion.

25  There will be a text order, as well.

**A-405**

1          Counsel, do either of you having anything further?

2          **MR. BONANNO:**  No, Your Honor.  Thank you.

3          **MR. SINGER:**  No, Judge.

4          **THE COURT:**  Okay.

5          Mr. Turnquist is remanded to the custody of the

6   marshals.  Have a good day.

7          **MR. BONANNO:**  Thank you, Judge.

8

9          (Proceedings concluded at 10:34 a.m.)

10

11                        *    *    *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**A-406**

1

2     In accordance with 28, U.S.C., 753(b), I certify that these

3   original notes are a true and correct record of proceedings in

4    the United States District Court for the Western District of

5        New York before the Honorable John L. Sinatra, Jr.

6

7

8

9

10   _s/ Bonnie S. Weber_          ___October 8, 2021___
        Signature                      Date

11

12   BONNIE S. WEBER

13   Official Court Reporter
     United States District Court
14   Western District of New York

15

16

17

18

19

20

21

22

23

24

25

Criminal Notice of Appeal - Form A

# A-407

## NOTICE OF APPEAL

### United States District Court

__Western__ District of __New York__

Caption:

__United States of America__ v.

__Nicholas Turnquist__

Docket No.: __21-CR-15-JLS-JJM__

__John L. Sinatra, Jr.__
(District Court Judge)

Notice is hereby given that __defendant-appellant Nicholas Turnquist__ appeals to the United States Court of Appeals for the Second Circuit from the judgment ____, other | ✓ __interlocutory order detaining the defendant__
(specify)

entered in this action on __September 30, 2021__ .
(date)

This appeal concerns: Conviction only |___| Sentence only |___| Conviction & Sentence |___ Other |✓

Defendant found guilty by plea |___| trial |___| N/A |✓ .

Offense occurred after November 1, 1987? Yes |___ No |___ N/A |✓

Date of sentence: _____ N/A |✓

Bail/Jail Disposition: Committed |✓ Not committed |___| N/A |

Appellant is represented by counsel? Yes ✓ |No | If yes, provide the following information:

Defendant's Counsel: __Robert C. Singer, Esq. (CJA Appointed)__

Counsel's Address: __Singer Legal PLLC__

__80 E Spring Street, Williamsville, NY 14221__

Counsel's Phone: __(716) 222-3288__

Assistant U.S. Attorney: __AUSA Paul Bonanno__

AUSA's Address: __U.S. Attorney's Office - WDNY__

__138 Delaware Ave, Buffalo, NY 14202__

AUSA's Phone: __(716) 843-5873__

_____
Signature

Robert C. Singer, Esq.
*Counsel for Defendant-Appellant Nicholas Turnquist*